Third Division

Filed: March 17, 2004   

Nos. 1-03-0073 & 1-03-0074 (consolidated)

COUNTY OF COOK, FOREST PRESERVE DISTRICT OF ) Petition For Review of

COOK COUNTY, and SHERIFF OF COOK COUNTY, ) Order of The Illinois Labor

) Relations Board, Local Panel.

)

Petitioners-Appellants, ) Nos. L-CA-01-032,  

)        L-CA-01-064, and

v. )            L-CA-01-059 

)        (consolidated)        

ILLINOIS LABOR RELATIONS BOARD LOCAL PANEL, )

TEAMSTERS LOCAL 714, ILLINOIS FRATERNAL )

ORDER OF POLICE LABOR COUNCIL, and   )

INTERNATIONAL UNION OF OPERATING )

ENGINEERS, LOCAL 150, )

)

Respondents-Appellees. )

____________________________________________________ )_______________________________

OFFICE OF THE COOK COUNTY STATE'S ATTORNEY, ) Petition for Review of 

) Order of The Illinois Labor 

Petitioner-Appellant, ) Relations Board, State Panel.

)

v. ) No.  S-CA-01-205

 )

ILLINOIS FRATERNAL ORDER OF POLICE LABOR )

COUNCIL, and ILLINOIS LABOR RELATIONS BOARD, ) 

STATE PANEL, )

)

Respondents-Appellees. )

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In these consolidated appeals, the petitioners, County of Cook (County), Forest Preserve District of Cook County (Forest Preserve District), Sheriff of Cook County (Sheriff), and the Office of the Cook County State's Attorney (State's Attorney) seek review of decisions and orders of the Illinois Labor Relations Board (ILRB).  The ILRB ruled that the petitioners violated the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 
et seq.
 (West 2000)), when they failed to bargain with the respondent-labor unions representing various groups of the petitioners' employees over the enforcement of a new residency ordinance which required existing employees who lived in Cook County to continue to do so and new employees to establish residency in Cook County within six months from the date they were hired.  For the reasons which follow, we affirm the decision and order of the Local Panel of the ILRB, and dismiss the appeal taken from the decision and order of the State Panel of the ILRB.  

The facts giving rise to these consolidated appeals are essentially undisputed.  The respondents, Teamsters Local Union No. 714 (Teamsters), Illinois Fraternal Order of Police Labor Council (IFOP), and International Union of Operating Engineers, Local 150 (IUOE), are labor unions representing eleven bargaining units of the petitioners' employees.  Specifically, the Teamsters represent a single bargaining unit composed of the deputy sheriffs employed by the County and Sheriff.  IFOP represents nine bargaining units composed of individuals employed by the petitioners, including: (1) Internal Affairs investigators in the Sheriff's Court Services Department; (2) sheriff sergeants in Court Services; (3) Internal Affairs investigators in the Department of Corrections, (4) investigators in the Sheriff's Fugitive Unit; (5) investigators in the Sheriff's Day Reporting Center; (6) security officers at the Cook County Hospital; (7) Juvenile Detention, MIS and Central Supply employees; (8) Forest Preserve District police officers; and (9) State's Attorney investigators.  IUOE represents a bargaining unit composed of employees working in the County's Highway Department.  With the exception of IFOP's Juvenile Detention unit and IUOE's bargaining unit, all of the units are composed of "peace officers" within the meaning of section 3(k) of the Act (5 ILCS 315/3(k) (2000)).  

Prior to December 2000, the petitioners
(footnote: 1) did not require their employees to reside within Cook County as a condition of employment.  On December 5, 2000, however, the Cook County Board of Commissioners adopted the following ordinance:  

"
ARTICLE I

Section 1.  Short Title:
  This article shall be known as the Cook County Personnel Residence Requirement Ordinance.

Section 2.  Purpose:
  To encourage each Cook County Employee to maintain a personal commitment to a residence in Cook County and to assure all residents that employees share in the responsibility of investing in the future of Cook County.

Section 3.  Residency Requirement of All Cook County Employees:
  Upon the effective date of this Ordinance and thereafter, the County of Cook shall only employ persons who maintain residence in Cook County throughout their employment.  Wages, salary and employee benefits may only be paid to persons residing in Cook County.  Any new employee shall have six (6) months from date of hire to establish actual residency with Cook County.

Section 4.  Exemption:  Grandfather Clause:
  All present Cook County employees who reside outside of Cook County upon adoption of this Ordinance are exempt from the provisions of the residency requirements of this Ordinance.

***

ARTICLE II

Section 1.  Effective Date:
 This ordinance shall take effect immediately upon adoption."

After the ordinance was passed, the respondents requested that the petitioners bargain over the changes created by the residency ordinance.  The petitioners, however, refused to bargain over the residency requirements.

On February 8, 2001, April 12, 2001, and May 1, 2001, respectively, the Teamsters, IUOE, and IFOP filed separate charges with the Local Panel of the ILRB, alleging that the County, Sheriff, and Forest Preserve District engaged in unfair labor practices within the meaning of sections 10(a)(4) and (1) of the Act (5 ILCS 315/10(a)(4), (1) (West 2000)) by failing to bargain over the residency requirement, which, they maintained, was a mandatory subject of collective bargaining.  IFOP also filed a companion charge with the State Panel of the ILRB, alleging the same infraction against the State's Attorney's Office.  Following an investigation of the charges, the Executive Director of the ILRB issued separate complaints in each case, and then consolidated the matters for purposes of a hearing. 

In lieu of presenting testimony at the hearing, the parties submitted stipulations of fact and stipulated exhibits to the administrative law judge (ALJ).  The ALJ issued a single decision in which she found that the residency requirement was a mandatory subject of bargaining, and that the petitioners violated the Act by failing to bargain with the respondents over this matter.  Thereafter, the petitioners, with the exception of the Forest Preserve District, filed timely exceptions to the ALJ's recommended decision, and the respondents subsequently filed responses to the exceptions.

The Local and State Panels of the ILRB heard oral arguments from all of the parties at a joint meeting held on October 1, 2002.  On December 5, 2002, the Local Panel of the ILRB issued a decision and order wherein it adopted the ALJ's recommended decision.  Specifically, the Local Panel of the ILRB found, 
inter
 
alia
, that: (1) the 1997 amendment to section 14(i) of the Act (5 ILCS 315/14(i) (West 2000)), which stated that residency requirements for peace officers are not mandatorily negotiable in "municipalities with populations greater than 1,000,000", did not include counties with populations over 1,000,000, such as Cook County; and (2) with respect to all of the bargaining units, the residency requirement imposed by the ordinance constituted a mandatory subject of bargaining under the balancing test prescribed in 
Central City Ass'n v. Illinois Education Labor Relations Board
, 149 Ill. 2d 496, 599 N.E.2d 892 (1992).  Accordingly, the Local Panel of the ILRB ordered the County, Sheriff, and Forest Preserve District to take certain actions, including rescinding the subject ordinance, and ceasing and desisting from refusing to bargain collectively in good faith with the respondents regarding any decision to implement a residency requirement.  

Also on December 5, 2002, the State Panel of the ILRB issued a separate decision and order regarding the State's Attorney, which closely mirrored that of the Local Panel.  The Board noted, however, that the State's Attorney had not addressed the issue of how the amendment to section 14(i) of the Act, excluding municipalities with populations greater than 1,000,000 from having to bargain over residency requirements, included the State's Attorney, who is an elected State official.  

The County, Sheriff, and Forest Preserve District filed a timely petition for direct review of the decision and order of the Local Panel of the ILRB (assigned appeal number 1-03-0073).  The State's Attorney also filed a petition for direct review of the decision and order of the State Panel of the ILRB (assigned appeal number 1-03-0074).  On June 6, 2003, we consolidated appeal numbers 1-03-0073 and 1-03-0074.

The primary issue before us in these consolidated appeals is whether the petitioners' refusal to engage in collective bargaining with the respondents over the imposition of a new residency requirement amounted to an unfair labor practice in violation of sections 10(a)(4) and (1) of the Act (5 ILCS 315/10(a)(4), (1) (West 2000)).  For reasons which will become clearer later in this opinion, we will address the issues presented in appeal numbers 1-03-0073 and 1-03-0074 separately.  We first consider the petitioners' arguments raised in appeal number 1-03-0073. 
 

Under section 10(a)(4) of the Act, it is an unfair labor practice for an employer “to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit ***.”  5 ILCS 315/10(a)(4) (West 2000).  In determining whether the petitioners committed an unfair labor practice in violation of section 10(a)(4), we must determine whether they had a mandatory duty to bargain collectively with the respondents before imposing the residency requirement. Therefore, the key determination in this appeal is whether the petitioners' decision to impose a residency requirement upon the employees represented by the respondents constitutes a mandatory subject of collective bargaining.

In general, we determine whether a matter is a mandatory subject of bargaining by applying the balancing test set forth by the Illinois Supreme court in 
Central City Education Ass'n v. Illinois Educational Labor Relations Board
, 149 Ill. 2d 496, 599 N.E.2d 892 (1992), and 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).  Pursuant to the 
Central City/Belvidere
 test, a matter is a mandatory subject of bargaining if it concerns wages, hours, and terms and conditions of employment and: (1) is either not a matter of inherent managerial authority; or (2) is a matter of inherent managerial authority, but the benefits of bargaining outweigh the burdens bargaining imposes on the employer's authority.  
Central City Education Ass'n
, 149 Ill. 2d at 523; 
City of Belvidere
, 181 Ill. 2d at 206.    

In this case, however, section 14(i) of the Act (5 ILCS 315/14(i) (West 2000)) specifically determines the negotiability of certain subjects of bargaining for firefighter and peace officer bargaining units.  Prior to 1997, section 14(i) explicitly provided that residency requirements were not mandatory subjects of bargaining for peace officer bargaining units.  The language in that section read in pertinent part as follows:

"(i)  In the case of peace officers, the arbitration decision shall be limited to wages, hours and conditions of employment and 
shall not
 include the following:  i) 
residency requirements
; ***."  (Emphasis added.).  

In 1997, section 14(i) was amended to read as follows:

"(i)  In the case of peace officers, the arbitration decision shall be limited to wages, hours, and conditions of employment (which may include residency requirements in municipalities with a population under 1,000,000, but those residency requirements shall not allow residency outside of Illinois) 
and shall not include the following: i)
 residency requirements in
 municipalities with a population of at least 1,000,000; 
***."  (Emphasis added.) (5 ILCS 315/14(i) (West 2000).     

The petitioners maintain that, in amending section 14(i) of the Act, it is clear that the General Assembly intended to: (1) remove the absolute statutory immunity from bargaining with respect to  "municipalities with a population under 1,000,000"; and (2) preserve the immunity of "municipalities with a population of at least 1,000,000" from having to bargain over peace officer residency requirements.  They argue, however, that it is unclear from the wording of the amendment whether or to what extent the legislature intended to change the immunity of "other units of government" from having to bargain over residency requirements.  

Judicial review of decisions of the ILRB is governed by the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2000)).  
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 507, 554 N.E.2d 155 (1990).  Where the issue before the reviewing court is one of law, such as the proper interpretation of a statute, the ILRB's findings are not binding on the court, and our review is 
de novo
.  
American Foundation of State, Federal, and Municipal Employees, Council 31 v. Illinois State Labor Relations Board
, 333 Ill. App. 3d 177, 181, 775 N.E.2d 1029 (2002).  Nevertheless, courts should accord substantial weight and deference to a statutory interpretation made by the agency charged with the administration and enforcement of the statute.  
American Foundation of State, Federal, and Municipal Employees, Council 31
, 333 Ill. App. 3d at 181. 

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Kavanagh v. County of Will
, 293 Ill. App. 3d 880, 882, 689 N.E.2d 299 (1997).  The language of the statute is the best indicator of legislative intent and, where it is clear, it must be given effect without resort to other interpretive aids.  
County of Knox ex rel. Masterson v. Highlands, L.L.C.
, 188 Ill. 2d 546, 556, 723 N.E.2d 256 (1999).  Where the statutory language is clear, a court should not depart from its plain meaning by reading into it exceptions, limitations, or conditions not expressed by the legislature.  
Gibbs v. Madison County Sheriff's Department
, 326 Ill. App. 3d 473, 476, 760 N.E.2d 1049 (2001).  If the language of the statute permits two constructions, one of which would render the provision absurd and illogical and the other of which would render the provision reasonable and sensible, the former construction must be avoided.  
Kaszubowski v. Board of Education of the City of Chicago
, 248 Ill. App. 3d 451, 457, 618 N.E.2d 609 (1993).    

The petitioners offer two conclusions regarding the intended effect of the 1997 amendment to section 14(i) of the Act.  First, they assert that the legislature intended to divide all governmental entities, not just municipalities, into "two camps" based on a population threshold of 1,000,000.  According to the petitioners, because the legislature intended to differentiate among local governmental entities based on population size, the logical conclusion is that the legislature intended to treat Cook County no differently than the City of Chicago (Chicago).  As the petitioners maintain, Cook County "contains" the population of Chicago.  The petitioners argue that the population-related factors that militate in favor of continuing to exempt Chicago from mandatory collective bargaining over peace officer residency requirements, such as the size and diversity of the community to which residency is confined and the burdens of bargaining on a large public employer, apply even more so to Cook County.  In further support of their argument, the petitioners note that the legislature has previously used the population threshold of 1,000,000 to distinguish Cook County and Chicago together from other units of local government in Illinois (
e.g.,
 Cook County and Chicago specifically classified by population under the Pension Code (40 ILCS 5/7-132 (West 2000)); (special classification for Cook County and Chicago with respect to tax levies (35 ILCS 200/21-155 (West 2000))).  According to the petitioners' interpretation of the amendment to section 14(i), the language providing that residency requirements are not mandatorily negotiable in "
municipalities
 with populations greater than 1,000,000" should also include counties with populations greater than 1,000,000, 
i.e.
, Cook County.  

To adopt the petitioners' construction of the statute, however, would require us to ignore the plain language of the statute.  By amending section 14(i), the legislature deliberately removed the prior blanket prohibition regarding bargaining over residency requirements, and substituted a narrow exception for "municipalities" with populations greater than 1,000,000.  Had the legislature wanted to distinguish on the basis of population alone, as the petitioners assert was its intent, it could have done so simply by referring to "units of local government", which would have included, 
inter
 
alia
, counties and municipalities.  The legislature’s election in this instance to depart from using the broader term "units of local government" and instead using the term "municipalities" in amending section 14(i) indicates that it intended a narrow application of the exception.  As our supreme court has stated:

"There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports, and a court is not at liberty to depart from the plain language of a statute by reading into it exceptions, limitations or conditions that the legislature did not express."  
Kunkel v. Walton
, 179 Ill. 2d 519, 534, 689 N.E.2d 1047 (1997). 

We, therefore, reject the petitioners' argument that the narrow exception the legislature included in section 14(i) includes counties with populations in excess of 1,000,000.

The petitioners' second conclusion is that the legislature intended to remove the blanket prohibition only for municipalities with populations of less than 1,000,000, as section 14(i) was amended to state that bargaining "may include residency requirements in municipalities with a population under 1,000,000."  The petitioners argue that this phrase clearly expresses the legislature's intent to impose new bargaining obligations only on smaller municipalities and to leave intact the prior prohibition on bargaining over residency requirements for all other governmental entities.  In further support of its argument, the petitioners point out that, while providing that bargainable matters now "may include" peace officer residency requirements in municipalities with populations under 1,000,000, this clause was further qualified by language stating, "but those residency requirements shall not allow residency outside of Illinois."  According to the petitioners, the foregoing additional restriction on bargaining rights makes it even clearer that the legislature intended the "may include" clause to set forth the only addition in section 14(i).

The petitioners' second interpretation of the amendment to section 14(i) is equally unavailing.  It appears quite illogical to assert that the prior prohibition against bargaining over residency requirements continues to apply as to every public employer, other than "municipalities with populations of less than 1,000,000," when the very language which created the prohibition ("arbitration decision *** shall not include *** residency requirements") has been entirely removed from the statute.  We further disagree with the petitioners' assertion that the ILRB's interpretation of section 14(i) would render superfluous the language stating that an arbitrator may address residency requirements for peace officers in municipalities with populations less than 1,000,000.  As the petitioners have pointed out, this language goes on to qualify that "those residency requirements shall not allow residency outside of Illinois."  This provision is not duplicative of any other language contained in section 14(i), and, therefore, the clause is not superfluous when read as a whole (see 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990) (a statute should be read as a whole and construed so that no word, phrase, or section is rendered meaningless or superfluous)).  

Having rejected the petitioners' arguments with respect to the construction of the amendment to section 14(i) of the Act, we find that the ILRB was correct in concluding that: (1) by adding language to section 14(i) providing that smaller municipalities "may" now bargain over residency, the legislature did not intend to keep in effect the prior blanket prohibition regarding bargaining; and (2) the legislature intended to make an exception from having to bargain over residency for peace officer bargaining units only for municipalities with a population over 1,000,000, not counties.  

The petitioners further argue that the ILRB's interpretation of section 14(i) of the Act would violate the special legislation provisions of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13).  Specifically, they assert that, because Chicago and Cook County "lie on the same side of [the] population threshold", the General Assembly cannot constitutionally differentiate between the two entities in regulating the same governmental function without some clear rational basis for doing so.  The petitioners maintain that, because Cook County includes the population of Chicago, any reasonable consideration related to Chicago's population that the General Assembly might have viewed as pertinent to its retaining the right not to have to bargain over residency requirements with peace officers (
i.e., 
the geographical size of Chicago, the large numbers of diverse communities within Chicago, or the size and complexity of Chicago's governmental apparatus), is equally applicable to Cook County. 

All statutes enjoy a strong presumption of constitutionality, and the party challenging the statute bears the burden of clearly rebutting this presumption.  
Miller v. Rosenberg
, 196 Ill. 2d 50, 57-58, 749 N.E.2d 946 (2001).  The special legislation clause prohibits the legislature from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated.  
Unzicker v. Kraft Food Ingredients Corp.
, 203 Ill. 2d 64, 86, 783 N.E.2d 1024 (2002).  However, the legislature has broad discretion in making statutory classifications, and the clause prohibits only those which are arbitrary.  
In re Estate of Jolliff
, 199 Ill. 2d 510, 519, 771 N.E.2d 346 (2002).  Because the statute under consideration does not affect a fundamental right or implicate a suspect class or quasi-suspect class, the appropriate standard of review is the rational basis test, under which the court must determine whether the statutory classification is rationally related to a legitimate public interest.  
Miller v. Hill
, 337 Ill. App. 3d 210, 222, 785 N.E.2d 532 (2003).  

We believe that there is a rational basis for treating Cook County, a county with a population in excess of 1,000,000, differently than Chicago, a municipality with a population in excess of 1,000,000, with respect to bargaining over peace officer residency requirements.  The usual justification for seeking to impose residency requirements on peace officers is that those officers who are assigned to patrol duties may need to be summoned from their residences on short notice in the case of an emergency.  As the Teamsters noted in their response to the petitioners' exceptions to the ALJ’s proposed decision, Chicago employs many more peace officers who are assigned to patrol duties than Cook County does because there are few remaining unincorporated areas of Cook County for their peace officers to patrol.  Accordingly, the legislature may have believed that there was a far lesser justification for a residency requirement for peace officers employed by Cook County than there is for those employed by a municipality such as Chicago.  Because in our judgment there is a rational basis for treating Cook County and Chicago differently, we do not find the distinction in question to be constitutionally infirm.  See 
Unzicker
, 203 Ill. 2d at 86 (if the court can reasonably conceive of circumstances that justify distinguishing the class that the statute benefits from the class outside its scope, the classification is constitutional
).     

For the foregoing reasons, we conclude that section 14(i) of the Act only prohibits employers from having to bargain over residency requirements for peace officers in municipalities with populations of at least 1,000,000.  Therefore, the petitioners were not prohibited from bargaining over the subject of residency in this case. 

We next determine whether the residency requirement imposed by the subject ordinance is a mandatory subject of bargaining under the 
Central City/Belvidere
 balancing test.  As stated, pursuant to the 
Central City/Belvidere
 test, a matter is a mandatory subject of bargaining if it concerns wages, hours, and terms and conditions of employment and: (1) is either not a matter of inherent managerial authority; or (2) is a matter of inherent managerial authority, but the benefits of bargaining outweigh the burdens bargaining imposes on the employer's authority.  
Central City Education Ass'n
, 149 Ill. 2d at 523; 
City of Belvidere
, 181 Ill. 2d at 206.

 
 The ILRB's decision as to whether a matter is a mandatory subject of bargaining is a mixed question of law and fact reviewable under the "clearly erroneous" standard.  
City of Belvidere
, 181 Ill. 2d at 205; 
City of Collinsville v. Illinois State Labor Relations Board
, 327 Ill. App. 3d 409, 420, 767 N.E.2d 886 (2002).  This standard is intended to provide some deference to an administrative agency's experience and expertise.  
City of Collinsville
, 329 Ill. App. 3d at 420.  A decision will be deemed "clearly erroneous" only where the reviewing court, on the entire record, is "left with the definite and firm conviction that a mistake has been committed."  
AFM Messenger Service, Inc. v. The Department of Employment Security
, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001).    

The first prong of the balancing test requires us to determine whether the residency requirement concerns wages, hours, and other terms and conditions of employment. The petitioners argue that the residency requirement in this case did not constitute a significant departure in "quality and kind" from the bargaining unit members' prior employment conditions. They further assert that the requirement does not have a "meaningful effect" on the working conditions of any employee.  The petitioners note that the only employees affected by the residency requirement are existing employees who already reside in Cook County.  According to the petitioners, because the subject ordinance only requires these employees to continue to reside in Cook County, any resulting burden placed upon them is "
de minimis
".

In 
Town of Cicero v. Illinois Association of Firefighters
, 338 Ill. App. 3d 364, 788 N.E.2d 286 (2003), the Town of Cicero (Town) imposed a residency ordinance which required that its employees must reside in the Town "no later than six months after commencing their employment and keep such domicile during the term of the appointment or employment."  The ordinance further stated that the failure to comply with the residency requirement "will be sufficient cause for termination of employment or removal from service".  
Town of Cicero
, 338 Ill. App. 3d at 368.  On appeal, we concluded that the ordinance satisfied the first prong of the 
Central City/Belvidere
 test because it stated that those not in compliance may be terminated.  In so finding, we stated, "[i]t is therefore quite clear that the Town considers and treats residency as a term and condition of employment."  
Town of Cicero
, 338 Ill. App. 3d at 371.  Here, the ordinance states that wages and benefits are payable only to employees who reside in Cook County.  The ALJ and the ILRB both noted in their decisions that the petitioners admitted that any employee who violated the residency requirement is subject to discipline, including being discharged.  As in 
Town of Cicero
, we conclude that, because the residency requirement subjects unit employees to potential discipline, their terms and conditions of employment are affected.  See also 
City of Calumet City v. Illinois Fraternal Order of Police Labor Council
, Nos. 1-02-1391 & 1-02-1665, cons., slip op. at 6 (November 26, 2003) (adopting reasoning from 
Town of Cicero
);  
County of Cook v. Licensed Practical Nurses Ass’n of Illinois
, 284 Ill. App. 3d 145, 671 N.E.2d 787 (1996). 

The second prong of the 
Central City/Belvidere
 test asks whether the matter at issue is also one of inherent managerial authority.  Section 4 of the Act states:

"Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees. ***." 5 ILCS 315/4 (West 2000).

The petitioners argue that this requirement is met because the purpose of the ordinance was "[t]o encourage each Cook County Employee to maintain a personal commitment to a residence in Cook County and to assure all residents that employees share in the responsibility of investing in the future of Cook County."  As the ILRB noted, however, the petitioners do not link the objective of the ordinance with any of the enunciated managerial rights stated in section 4 of the Act.  This deficiency was also noted in 
Town of Cicero
, where we stated, "If, for example, the Town could argue that firefighters living in Town was essential to prompt responses to emergency situations, then it might have a viable argument under this prong.  No such argument is advanced, however."  
Town of Cicero
, 338 Ill. App. 3d at 371.  We do not believe that the petitioners have satisfied the second prong of the test.  Because we have concluded that the residency ordinance does not involve a matter of inherent managerial authority, our analysis ends here and we need not reach the third prong of the 
Central City/Belvidere
 test.  See 
Central City Education Ass’n
, 149 Ill. 2d at 253; 
City of Belvidere
, 181 Ill. 2d at 206.      

However, even if we found merit to the petitioners' argument that the residency requirement satisfied the second prong of the balancing test, we would nevertheless conclude that the benefits of bargaining over the residency requirement outweigh the burdens bargaining would impose.  The petitioners argue that bargaining would force them to negotiate as to residency with too many bargaining units, and that, because residency is unique in that it is an overarching consideration common to all employees, consistency across all bargaining units may not be achieved.  By law, the petitioners are required to bargain with the exclusive representatives of certain units, irrespective of their plurality, regarding mandatory subjects of bargaining.  5 ILCS 315/7 (West 2000).  As the ILRB noted in its decision, "[w]hether [the petitioners] can secure consistency across the board is a product of the negotiations they conduct with the [respondents]."  The petitioners further assert that, in comparison, the affected employees "stand to gain very little from such bargaining."  We disagree.  The union members have a significant interest in their choice of residency (see 
Town of Cicero
, 338 Ill. App. 3d at 372), and the potential discipline they could face for violating the requirement.   

Having applied the balancing test in 
Central City/Belvidere
, we conclude that the residency requirement imposed on the employees represented by the respondents in the instant case is a mandatory subject of bargaining.  Because the petitioners refused to bargain over a mandatory subject of bargaining, we affirm the decision and order of the Local Board of the ILRB finding that the petitioners engaged in an unfair labor practice in violation of sections 10(a)(4) and (1) of the Act (5 ILCS 315/10(a)(4), (1) (West 2000)).       

We now turn to appeal number 1-03-0074.  Before addressing the State's Attorney's specific arguments on appeal, we must address a preliminary matter raised by the ILRB.  The ILRB argues that this court erred in permitting the State's Attorney to amend its petition for direct review to name the State Panel of the ILRB as a respondent, and, as a consequence, the action referenced in appeal number 1-03-0074 must be dismissed. 

The record shows that, while the petition for review filed by the State's Attorney named the IFOP as a respondent, it failed to name as a respondent the State Panel of the ILRB, which was the agency hearing the cause and was listed as a party of record in an attachment to its final order and decision.  The State's Attorney did, however, state in its petition for review that it was seeking review of the decision and order issued by the State Panel of the ILRB.  The ILRB subsequently filed a motion to dismiss the petition for direct review, arguing that section 3-113 of the Administrative Review Law (735 ILCS 5/3-113 (West 2000)) and Supreme Court Rule 335 (155 Ill. 2d R. 335) prohibit appellate review of petitions that fail to name the agency as a respondent. The State's Attorney subsequently filed a motion for leave to file an amended petition for review, arguing that its failure to name the State Panel of the ILRB in its caption was a "technical oversight", and further pointing out that the ILRB was served with a copy of the petition for review.  On March 21, 2003, a different division of this court denied the ILRB's motion to dismiss, and allowed the State's Attorney leave to file a corrected petition for review.   

Our supreme court has held that administrative review actions taken directly to the appellate court involve the exercise of "special statutory jurisdiction."  
McGaughy v. Illinois Human Rights Comm'n
, 165 Ill. 2d 1, 6-7, 649 N.E.2d 404 (1995).  When a court is exercising special statutory jurisdiction, the language of the act conferring jurisdiction limits the court's power to hear the case.  
ESG Watts, Inc. v. Pollution Control Board
, 191 Ill. 2d 26, 30, 727 N.E.2d 1022 (2000).  A party seeking to invoke special statutory jurisdiction thus "must strictly adhere to the prescribed procedures" in the statute.  
McGaughy
, 165 Ill. 2d at 12.  With these principles in mind, we now turn to the relevant statutes that are applicable to this appeal.           

Section 11(e) of the Act provides in pertinent part: 

"A charging party or any person aggrieved by a final order of the [ILRB] granting or denying in whole or in part the relief sought may apply for and obtain judicial review of an order of the [ILRB] entered under this Act, in accordance with the provision of the Administrative Review Law, as now or hereafter amended ***."  5 ILCS 315/11(e) (West 2000).

Section 11 of the Act incorporates by reference the requirements of the Administrative Review Law.  Section 3-113(b) of the Administrative Review Law controls the direct review of administrative decisions in the appellate court.  It provides as follows:

"The petition for review shall be filed in the appellate court and shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed.  The agency and all other parties of record shall be named as respondents.  If, during the course of a review action, the court determines that a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, and only if that party was not named by the administrative agency in its final order as a party of record, then the court shall grant the plaintiff 21 days from the date of the determination in which to name and serve the unnamed party as a defendant.  The court shall permit the newly served defendant to participate in the proceedings to the extent the interest of justice may require."  735 ILCS 5/3-113(b) (West 2000). 

Simply stated, section 3-113 requires a party seeking appellate review of an administrative agency's order to include the agency and all parties of record as respondents in its petition for review.  If the petitioner fails to include them in its petition, the section permits the petitioner to amend its petition for review only if the unnamed party was not named by the administrative agency in its final order. 

Relying on this court's decision in 
Cook County Sheriff's Enforcement Ass'n v. County of Cook
, 323 Ill. App. 3d 853, 753 N.E.2d 309 (2001), the ILRB argues that this court erred in allowing the State's Attorney to amend its petition for review.  In that case, the petitioner, the Cook County Sheriff's Enforcement Association, appealed an order of the Local Panel of the ILRB dismissing its representation petition.  While the petitioner named Cook County, the sheriff of Cook County, and the Teamsters as respondents, the petitioner failed to name the ILRB as a respondent in its petition for review.  The ILRB filed a motion to dismiss the petition for direct review, and the petitioner responded by filing a motion for leave to file an amended petition for review.  Both parties' motions were taken with the case.  After setting forth the requirements of section 3-113(b) of the Administrative Review Law, we noted that Public Act 89-438, effective December 15, 1995, added language to section 3-113 that specified when the appellate court may allow amendment to a petition if the petitioner fails to name an agency or party of record as a respondent.  
Cook County Sheriff's Enforcement Ass'n
, 323 Ill. App. 3d at 857.  Because the petitioner did not name the ILRB as a respondent in its petition for review, we stated that, under the amended statute, a court may grant leave to amend a defective petition to name an additional party "
only
 if that party was not named by the administrative agency in its final order."  
Cook County Sheriff's Enforcement Ass'n
, 323 Ill. App. 3d at 858.  Accordingly, we denied the petitioner's motion for leave to amend its petition, and dismissed the appeal.  
Cook County Sheriff's Enforcement Ass'n
, 323 Ill. App. 3d at 858. 

In the instant case, the State's Attorney sought to amend its petition for review to name as a respondent the State Panel of the ILRB, the agency which issued the final opinion and order.  Section 3-113 does not provide an exception which would allow the State's Attorney to amend its petition for review to name the agency as a respondent.  Therefore, the State's Attorney's failure to name the State Panel of the ILRB as a respondent in its original petition for review is a defect which requires us to dismiss the instant appeal.  

In 
ESG Watts, Inc. v. Pollution Control Board
, 191 Ill. 2d 30, 727 N.E.2d 1022 (2000), our supreme court addressed the ramifications of a petitioner's failure to name a party of record as a respondent in its petition for review in the appellate court.  In affirming the appellate court's dismissal of the action, the court in 
ESG Watts, Inc.
 stated:

"Section [3-]113 of the [Administrative] Review Law and Rule 335, which do apply, explicitly direct that in a petition for review in the appellate court 'the agency and all other parties of record shall be named respondents.'  Again, this language is clear and unambiguous.  We see no basis for departing from the reasoning in 
Lockett [v. Chicago Police Board
, 133 Ill. 2d 349, 549 N.E.2d 1266 (1990)] that a party seeking administrative review must strictly comply with the statutes conferring jurisdiction, and – because the statutes require that all the parties of record be named – therefore [the petition for administrative review] must name all parties or face dismissal ***."  
ESG Watts, Inc.
, 191 Ill. 2d at 36.  

Because strict adherence to the procedures of the Administrative Review Law and the supreme court rules is required and the State's Attorney has failed to comply with the same, we conclude that: (1) we erred in allowing the  State's Attorney to amend its petition for review to add the State Panel of the ILRB as a respondent in the instant action, and, as a consequence, we vacate our order of March 21, 2003, granting the State's Attorney leave to do so; and (2) for the foregoing reasons, we dismiss appeal number1-03-0074 (see 
ESG Watts, Inc.
, 191 Ill. 2d at 36; 
Cook County Sheriff's Enforcement Ass'n
, 323 Ill. App. 3d at 856).  

Accordingly, we affirm the decision and order of the Local Panel of the ILRB, and dismiss the appeal taken from the decision and order of the State Panel of the ILRB.    

No. 1-03-0073 – Affirmed.

No. 1-03-0074 – Appeal dismissed.

SOUTH and KARNEZIS, JJ., concur.  

FOOTNOTES
1: For purposes of clarification, we will refer to the appellants, the County, Sheriff, Forest Preserve, and State's Attorney's Office collectively as the "petitioners", and will refer to the parties by name only when the facts or arguments raised on appeal pertain to them individually.