FIFTH DIVISION
May 18, 2007

No. 1-06-2228

| | | |
|---|---|---|
| THE ILLINOIS HOTEL AND LODGING | ) | Appeal from the |
| ASSOCIATION, an Unincorporated Association, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05 CH 13796 |
| | ) | |
| ART LUDWIG, Director, The Department | ) | |
| of Labor, AND UNITE HERE LOCAL 1, | ) | Honorable |
| | ) | James F. Henry, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, the Illinois Hotel and Lodging Association, filed a declaratory judgment action against defendant, the Director for the Illinois Department of Labor, seeking to have section 3.1 of the One Day Rest in Seven Act (the Act) (820 ILCS 140/3.1 (West Supp. 2005)) declared unconstitutional on the grounds that it violated the Illinois Constitution's prohibition against special legislation, as well as the equal protection clauses of the Illinois Constitution and United States Constitution, and the supremacy clause of the United States Constitution. The trial court granted defendant Unite Here Local 1 leave to intervene. The parties filed cross-motions for summary judgment. The trial court found that section 3.1 of the Act passes constitutional muster and granted defendants' motion for summary judgment. Plaintiff appeals. We affirm.

Plaintiff is a statewide trade association of Illinois hotels with members operating hotels in Cook County. Plaintiff's purpose is to promote the welfare and interests of its members and of the hospitality industry in general.

Unite Here Local 1 represents approximately 1,722 room attendants in Cook County and the Chicago metropolitan area. The room attendants' job is to clean guest rooms. Generally, all room attendants change bed linens, remove dirty sheets and towels, clean bathrooms, vacuum, replace amenities in bathrooms (i.e., soap, tissue, shampoo, etc.), dispose of garbage, and dust and tidy guests' clothes.

Hotel room attendants essentially work on a piece-rate system. Both union and nonunion hotels require room attendants to clean a quota of rooms each work shift. Although they are paid by the hour, room attendants are required to deliver a quantified amount of work during their shift and can be disciplined if they fail to do so.

The quota system forces many room attendants to skip breaks. In a published survey of room attendants, two-thirds stated that they had skipped or shortened lunch or rest breaks, or worked longer hours, to complete assigned rooms.

The workload pressure facing room attendants has contributed to injury. Ergonomic research conducted by the Ohio State University Biodynamics Laboratory found that the typical tasks performed by hotel housekeepers put these workers at a very high risk for lower back disorder.

Hotel room attendant work has become more strenuous in recent years. Hotel chains have engaged in so-called "bedding wars," adding heavier mattresses, more pillows and additional amenities to compete for travelers' dollars. A published survey of room attendants found that work intensification over the previous five years, measured by the increased number and intensity of tasks required to clean a room, had led to a statistically significant increase in neck pain and

lower back pain among room attendants.

Section 3.1 of the Act was introduced and passed to protect hotel room attendants from overwork. Section 3.1(c) (820 ILCS 140/3.1(c) (West Supp. 2005)) requires employers to provide hotel room attendants with two 15-minute breaks and one 30-minute meal period in each workday in which the room attendant works at least seven hours. Section 3.1(d) also requires the employers of hotel room attendants to make available a room with adequate seating and tables for room attendants to enjoy the break. 820 ILCS 140/3.1(d) (West Supp. 2005). The room shall have clean drinking water provided without charge. 820 ILCS 140/3.1(d) (West Supp. 2005). Hotel room attendants who have been denied the mandated break periods have a private cause of action for treble damages and are protected against retaliation for invoking the Act. See 820 ILCS 140/3.1(f),(g) (West Supp. 2005). Section 3.1 applies only to hotel room attendants employed in counties with a population greater than 3 million, i.e., to employees of hotels located in Cook County. See 820 ILCS 140/3.1(b) (West Supp. 2005).

On August 16, 2005, one day after section 3.1's effective date, plaintiff filed a verified complaint for declaratory judgment and injunctive relief against Art Ludwig, the Director of the Illinois Department of Labor. In its four-count complaint, plaintiff alleged that section 3.1 was special legislation in violation of article IV, section 13, of the Illinois Constitution; violated the equal protection clauses of the Illinois Constitution and the United States Constitution; and was preempted by the National Labor Relations Act (NLRA) (29 U.S.C. §151 et seq. (2000)).

Plaintiff concurrently moved for a temporary restraining order. On August 18, 2005, the circuit court granted the restraining order, enjoining the Director from enforcement of section 3.1.

No. 1-06-2228

The court granted Unite Here Local 1 leave to intervene.

The parties filed cross-motions for summary judgment. On July 28, 2006, the circuit court rejected plaintiff's special legislation, equal protection, and preemption arguments, granted defendants' motion for summary judgment, and dissolved the temporary restraining order that previously had been entered. Plaintiff filed this timely appeal.

First, plaintiff contends that section 3.1 constitutes unconstitutional special legislation. The special legislation provision of the Illinois Constitution of 1970 states:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, §13.

"All statutes enjoy a strong presumption of constitutionality, and the party challenging the statute bears the burden of clearly rebutting this presumption." County of Cook v. Illinois Labor Relations Board Local Panel, 347 Ill. App. 3d 538, 549 (2004). The special legislation clause prohibits the legislature from conferring a special benefit or exclusive privilege upon one group while excluding other similarly situated groups. In re Estate of Jolliff, 199 Ill. 2d 510, 519 (2002). The legislature has broad discretion in making statutory classifications, and the special legislation clause prohibits only those that are arbitrary. Unzicker v. Kraft Food Ingredients Corp., 203 Ill. 2d 64, 86 (2002). Where, as here, the statute under consideration does not affect a fundamental right or implicate a suspect class or quasi-suspect class, the appropriate standard of review is the rational basis test. County of Cook, 347 Ill. App. 3d at 550. Under the rational basis test, the court must determine whether the statutory classification is rationally related to a

-4-

No. 1-06-2228

legitimate public interest. County of Cook, 347 Ill. App. 3d at 550. "If this court can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope, it will uphold the statute." Crusius v. Illinois Gaming Board, 216 Ill. 2d 315, 325 (2005).

Our supreme court has further defined the rational basis test when reviewing legislative classifications based on population or territorial differences. Such a classification will survive a special legislation challenge only: (1) where founded on a rational difference of situation or condition existing in the persons or objects upon which the classification rests; and (2) where there is a rational and proper basis for the classification in view of the objects and purposes to be accomplished. In re Petition of the Village of Vernon Hills, 168 Ill. 2d 117, 123 (1995). We review de novo the circuit court's determination of section 3.1's constitutionality. Crusius, 216 Ill. 2d at 324.

Plaintiff contends that section 3.1 of the Act, which provides hotel room attendants with two 15-minute breaks and one 30-minute meal period in each workday in which the room attendant works at least seven hours, violates the special legislation clause because it applies only to employees of hotels located in Cook County. Plaintiff contends that there is no rational basis to distinguish room attendants in Cook County from those in other counties. Plaintiff also contends that section 3.1's distinction between room attendants in Cook County from those in other counties does not bear any rational relationship to the purpose of the Act, which was to diminish the work burden placed on hotel room attendants.

Plaintiff's argument is unavailing, as the record indicates that in lobbying against the

passage of section 3.1, plaintiff itself raised distinctions between hotels in Chicago versus hotels located outside of Cook County. As initially proposed, section 3.1 applied statewide. In lobbying materials used before section 3.1 was amended to apply only to Cook County, plaintiff stressed the effect that the imposition of "Chicago work rules" would have on smaller hotels in other parts of the state. Specifically, in a 2005 lobbying letter to its members, plaintiff asked legislators to vote against "Statewide Imposition of Room Attendant Work Rules" because "smaller businesses will be subjected to these Chicago work rules that will create undue paperwork and litigation loads, inherently financially over-burdening small hotels in Illinois." At a House Labor Committee hearing, plaintiff's president introduced the general manager of a Radisson hotel in Molene, who testified, "[A] couple of the issues on the bill *** would put some undue pressure on operators, especially the smaller operators outside of Chicago that may not be able to put a separate break area in their hotel."

Plaintiff's president pointed out that hotels in downstate areas were having difficulty recovering from the terrorist attacks of September 11: "[I]n Rockford, our occupancy is 55%. In the Quad Cities, our occupancy is 56%. Way below the levels that were there pre-9/11." Legislators from downstate areas also stressed the different competitive pressures faced by hotels and motels in their regions. For example, at a House Labor Committee hearing held on March 17, 2005, Representative Dave Winters of Rockford stated, "Chicago doesn't have to compete with-- across State lines, but many of the downstate hotels do, and *** it's another job-killing act that we're doing here in Springfield, and I will oppose it." 94th Ill. Gen. Assem., House Proceedings, March 17, 2005 (statement of Representative Winters).

A compromise bill was forwarded. In explaining the decision to amend the bill to apply only to hotel room attendants in Cook County, Representative Fritchey, the House sponsor of the bill, stated:

"[I] t was not my intention to unduly burden small little hotels, downstate hotels. And the impetus came from Chicago and Cook County. And in response to concerns raised by *** legislators, we filed an amendment which was adopted onto the bill yesterday that limited it solely to hotels within Cook County." 94th Ill. Gen. Assem., House Proceedings (statement of Representative Fritchey).

Thus, the plaintiff itself recognized differences between Cook County and downstate hotels that justified section 3.1's differentiation between hotel room attendants in Cook County and hotel room attendants elsewhere in Illinois. As a rational basis existed for the legislation, section 3.1 does not run afoul of the special legislation clause.

Further, courts have upheld other statutes that apply only to particular counties or particular cities. In Chicago National League Ball Club, Inc. v. Thompson, 108 Ill. 2d 357 (1985), our supreme court upheld a statute regulating noise at certain types of stadiums used for nighttime sporting events in cities with a population in excess of 1 million. Wrigley Field was the only stadium meeting the statutory definition. Rejecting a special legislation challenge, the supreme court held that "there is a rationally founded difference between a less populous city and a city with a greater population. It might be reasonably anticipated that in a typical urban setting more people would be affected in the larger city by the noise from spectators in a stadium for a nighttime event." Thompson, 108 Ill. 2d at 369-70.

In Cutinello v. Whitley, 161 Ill. 2d 409 (1994), the legislature targeted a transportation infrastructure statute to Du Page, Kane and McHenry Counties alone. The counties defended the statute based on the rapid population growth in those three counties, arguing that the magnitude of the transportation problem addressed in the statute was greatest in those areas. Cutinello, 161 Ill. 2d at 418. The supreme court agreed that this justification satisfied rational basis review. The supreme court noted that "[t]ransportation problems may exist to a lesser degree in other parts of the State than in the Counties. However, 'the legislature is not bound to pass one law meeting every exigency, but may consider degrees of evil.'" Cutinello, 161 Ill. 2d at 422, quoting People ex rel. County of Du Page v. Smith, 21 Ill. 2d 572, 579 (1961).

Similarly, the legislature here rationally could have concluded from the evidence presented to it that section 3.1's population classification is based on a reasonable appraisal of differences between the hospitality industry in Cook County and that of downstate areas. Specifically, the evidence indicates that Cook County has more hotel room attendants than the rest of the State combined. The evidence also showed that the revenue per available room for all Chicago hotels, which incorporates measures both of the room rate that the hotels can charge and the occupancy that they achieve at that rate, was higher than any other area of the State. The legislature rationally could have concluded from such evidence that section 3.1 would protect hotel room attendants from overwork in the jurisdiction where the majority of such employees would be impacted and in the jurisdiction best positioned to absorb the costs of section 3.1's new regulations.

Plaintiff contends that such reasoning is speculative. However, our supreme court has

held that if a court "can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope, it will uphold the statute." (Emphasis added.) Crusius, 216 Ill. 2d at 325. Further, our supreme court has held that "[u]nder the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action." People ex rel. Lumpkin v. Cassidy, 184 Ill. 2d 117, 124 (1998).

Accordingly, as there are conceivable rationales for its classifications, section 3.1 passes constitutional muster. Section 3.1 does not violate the special legislation clause.

Next, plaintiff contends that section 3.1 violates equal protection. An equal protection challenge generally is judged under the same standards applicable to a special legislation challenge. Crusius, 216 Ill. 2d at 325. Therefore, in the present case, plaintiff's equal protection challenge fails for the same reasons discussed above concerning plaintiff's special legislation challenge.

Next, plaintiff contends that section 3.1 violates the supremacy clause of the United States Constitution because it is preempted by the NLRA. There are two primary doctrines of NLRA preemption, as set forth in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) (Garmon preemption), and in Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976) (Machinists preemption). The Garmon preemption doctrine "safeguards the primary jurisdiction of the National Labor Relations Board to pass judgment on certain conduct, such as labor picketing, which might be held protected by §7 of the [National

Labor Relations] Act but which might also be prohibited by §8 of the Act." Livadas v. Bradshaw, 512 U.S. 107, 117 n. 11, 129 L. Ed. 2d 93, 106 n.11, 114 S. Ct. 2068, 2075 n.11 (1994). "When an activity is arguably subject to §7 or §8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Garmon, 359 U.S. at 245, 3 L. Ed. 2d at 783, 79 S. Ct. at 780.

Garmon preemption is not applicable here, because section 3.1 of the Act does not touch on conduct protected by section 7 of the NLRA or prohibited by section 8 of the NLRA. Section 7 of the NLRA provides that employees "have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and *** to refrain from any or all of such activities." 29 U.S.C. §157 (2000). Section 8(a) of the NLRA makes it unlawful for employers to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7; to dominate or interfere with the administration of a union; to discriminate on the basis of union membership; to retaliate for participation in proceedings under the NLRA; and to refuse to bargain collectively. 29 U.S.C. §158(a)(1) through (a)(5) (2000). Section 8(b) of the NLRA imposes similar prohibitions on conduct by unions. 29 U.S.C. §158(b) (2000).

Section 3.1 of the Act does not attempt to regulate conduct governed by section 7 or section 8 of the NLRA. Rather, section 3.1 sets forth a minimum labor standard mandating rest breaks and a meal period for individual hotel room attendants in Cook County, whether they work

for a union or nonunion employer. Minimum labor standards like those set forth in section 3.1 of the Act are not preempted since "Congress is understood to have legislated against a backdrop of generally applicable labor standards." Livadas, 512 U.S. at 123 n.17, 129 L. Ed. 2d at 109 n.17, 114 S. Ct. at 2078 n.17.

In Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985), and Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 96 L. Ed. 2d 1, 107 S. Ct. 2211 (1987), the United States Supreme Court discussed the interplay between minimum labor standards and the NLRA. In Metropolitan Life, Massachusetts required health insurance plans, including collectively bargained plans, to have certain mental health benefits prescribed by the state. A unionized employer contended that the law interfered with its right to bargain freely over the content of its medical plan. The United States Supreme Court disagreed, holding that "[t]he NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain." Metropolitan Life, 471 U.S. at 753, 85 L. Ed. 2d at 749, 105 S. Ct. at 2396. "The evil Congress was addressing thus was entirely unrelated to local or federal regulation establishing minimum terms of employment." Metropolitan Life, 471 U.S. at 754, 85 L. Ed. 2d at 749, 105 S. Ct. at 2397. The Supreme Court further explained:

"Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. Nor do they have any but the most indirect effect on the right of self-organization established in the Act. Unlike the NLRA, mandated-benefit laws are not laws

designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part 'designed to give specific minimum protections to <u>individual</u> workers and to ensure that <u>each</u> employee covered by the Act would receive' the mandated health insurance coverage. [Citation.] Nor do these laws even inadvertently affect these interests implicated in the NLRA. Rather, they are minimum standards 'independent of the collective-bargaining process [that] devolve on [employees] as individual workers, not as members of a collective organization.' [Citation.]" (Emphasis in the original.) <u>Metropolitan Life</u>, 471 U.S. at 755, 85 L. Ed. 2d at 750, 105 S. Ct. at 2397.

In <u>Coyne</u>, the pertinent issue was whether a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing was preempted by the NLRA. <u>Coyne</u>, 482 U.S. at 3-4, 96 L. Ed. 2d at 6-7, 107 S. Ct. at 2213-14. Citing <u>Metropolitan Life</u>, the United States Supreme Court found that the Maine severance pay statute was not preempted by the NLRA, because it was a minimum labor standard that did not impermissibly intrude on the collective-bargaining process. <u>Coyne</u>, 482 U.S. at 22-23, 96 L. Ed. 2d at 18, 107 S. Ct. at 2223. The Supreme Court further held:

"It is true that the Maine statute gives employees something for which they otherwise might have to bargain. That is true, however, with regard to any state law that substantively regulates employment conditions. Both employers and employees come to the bargaining table with rights under state law that form a 'backdrop' for their negotiations. [Citations.] Absent a collective-bargaining agreement, for instance, state

common law generally permits an employer to run the workplace as it wishes. The employer enjoys this authority without having to bargain for it. The parties may enter negotiations designed to alter this state of affairs, but, if impasse is reached, the employer may rely on pre-existing state law to justify its authority to make employment decisions; that same state law defines the rights and duties of employees. Similarly, Maine provides that employer and employees may negotiate with the intention of establishing severance pay terms. If impasse is reached, however, pre-existing state law determines the right of employees to a certain level of severance pay and the duty of the employer to provide it. Thus, the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA ... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining.' [Citation.]" Coyne, 482 U.S. at 21-22, 96 L. Ed. 2d at 17-18, 107 S. Ct. at 2222-23.

Similarly, in the present case, section 3.1 of the Act provides rest breaks and a meal period for union and nonunion hotel room attendants in Cook County and neither encourages nor discourages the collective bargaining processes that are the subject of the NLRA. Section 3.1 thus provides minimum standards independent of the collective bargaining process that devolve on the Cook County hotel room attendants as individual workers, not as members of a collective organization. Accordingly, Garmon preemption is not applicable here.

Plaintiff contends that section 3.1 does not constitute a "true" minimum labor standard because it does not apply statewide, but only to hotel room attendants in Cook County. Plaintiff's

argument is unavailing. Minimum labor standards need not necessarily apply statewide but, as discussed, must "affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Metropolitan Life, 471 U.S. at 755, 85 L. Ed. 2d at 750, 105 S. Ct. at 2397. Section 3.1 meets the requirements of a minimum labor standard and thus are not preempted under Garmon.

Plaintiff also contends that the penalties imposed by section 3.1 for failing to comply with the rest break requirements violates Garmon and provides grounds for preemption as such penalties are not provided for in the NLRA. Plaintiff's argument is unavailing, as section 3.1's private cause of action supports the minimum labor standards provided for in section 3.1 and is not inconsistent with the statutory scheme of the NLRA.

Nor is Machinists preemption applicable. Machinists prohibits the imposition of "additional restrictions on economic weapons of self-help, such as strikes and lockouts [citation], unless such restrictions presumably were contemplated by Congress." Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 614-15, 89 L. Ed. 2d 616, 624, 106 S. Ct. 1395, 1399 (1986). Section 3.1 of the Act does not proscribe or support strikes, lockouts, use of replacement workers, or any other economic weapon of self-help that Congress intended to leave unregulated. Accordingly, Machinists is inapplicable to section 3.1 of the Act.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ.'s concur.