LOCAL No. 193, International Brotherhood of Electrical Workers, AFL-CIO, Plaintiff-Appellee, v. THE CITY OF SPRINGFIELD *et al.*, Defendants-Appellants.

Fourth District   No. 4—90—0532

Opinion filed March 29, 1991.

James K. Zerkle, Corporation Counsel, of Springfield (John P. Schmit and Jill D. Leka, Assistant Corporation Counsel, of counsel), for appellants.

Charles A. Werner and David C. Holtzman, both of Schuchat, Cook & Werner, of St. Louis, Missouri, for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

On December 1, 1987, Local No. 193, International Brotherhood of Electrical Workers, AFL-CIO (Union), filed a complaint for declaratory judgment in the circuit court of Sangamon County against the defendants, City of Springfield and City Water, Light and Power (City), seek-

ing an order that, pursuant to a labor agreement between them, Union employees are not subject to Civil Service Commission Rules (Commission Rules), and seeking a permanent injunction ordering the City to desist disciplining the employees pursuant to these Commission Rules. Following a hearing on June 29, 1990, the court entered an order so providing. The City now appeals.

The declaratory judgment complaint alleged that the Union represented various employees of the City Water, Light and Power Department (Department); the parties have been operating under a labor agreement continually since the 1950's; this agreement contains an arbitration procedure which is in accordance with the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 101 *et seq.*) and the Illinois Public Labor Relations Act (Labor Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*); in People ex rel. Dellert v. Torrey (Cir. Ct. Sangamon Co.), No. 96691 (*Torrey*), the circuit court of Sangamon County found the Union was exempt from the provisions of "An Act to regulate the civil service of cities" (Civil Service Act) (Ill. Rev. Stat. 1949, ch. 24½, pars. 39 through 77a); and since August 1987 the City has refused to honor the terms of the labor agreement by disciplining the Union's employees pursuant to the Commission Rules. Accordingly, the complaint asked that (1) the court declare the Union's members were not subject to the Commission Rules and, instead, are subject to the Labor Act and the parties' agreement; and (2) the court enter a permanent injunction commanding the City to desist in disciplining the Union's members through civil service procedures rather than the grievance and arbitration procedure agreed to by the parties.

The evidence presented established that since 1940 the Union and the City have continually operated under a written labor agreement, and it has remained substantially the same during this time. In 1985, an election-of-remedies provision was added, allowing an employee to choose to have a disciplinary matter resolved either through the agreement's grievance and arbitration provisions or pursuant to the City's employment policy. The written agreement contains no rules of conduct, no standards of discipline, and no process for initiating discipline.

The City has adopted an employee policy, which applies to all employees as long as its provisions are not inconsistent with any collective-bargaining agreements. This policy contains standards and procedures for discipline and, under the causes for discharge, it lists 14 different violations. The last one is "[f]ailure to follow rules of conduct as promulgated by the Civil Service Commission." The policy also provides that the disciplinary action shall be taken in accordance with the Commission Rules.

The City continues to discipline the Union's members for violating rule 48 of the Civil Service Commission (Commission). This rule sets forth the grounds for discipline under the Commission Rules, and it contains many of the same grounds contained in the City employment policy. The Union objects to this procedure, maintaining that its members in the Department are not subject to the Commission. The evidence establishes that these members are not subject to civil service testing or civil service eligibility lists.

After reviewing the evidence, the court found for the Union. It concluded that the Union employees are exempt from the Commission Rules, and it ordered the City to desist from disciplining the Union's members by referring to or alleging a violation of the Commission Rules. This appeal followed.

■ This case involves an interpretation of the labor agreement between the parties. In *Board of Governors v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 470, 524 N.E.2d 758, 761, this court addressed some applicable general provisions, stating:

> "The meaning of the language used in a written contract is ordinarily a question of law. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178.) The primary objective in construing a contract is to effectuate the parties' intentions when entering the agreement. The entire document should be considered. (*Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 490 N.E.2d 972.) Absent ambiguity, the intention of the parties must be gathered from the language used in the contract, not from a party's construction of that language. (*Lenzi*, 103 Ill. 2d 290, 469 N.E.2d 178.) A contract is ambiguous if it is subject to more than one reasonable interpretation. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 514 N.E.2d 479.) The clear and unambiguous language of a bargaining agreement should control. *Bogguess v. Board of Education* (1985), 133 Ill. App. 3d 864, 479 N.E.2d 1100."

It is the City's position that use of the Commission Rules to determine what conduct results in discipline is appropriate under the management-rights provision of the agreement. The agreement includes the following paragraph:

> "*Management Rights*—Subject to the provisions of this Agreement and [Labor Act (Ill. Rev. Stat. 1989, ch. 38, par. 1601—27)], [the City] retains the inherent management authority and is vested with the exclusive right to control its operations, to determine its policies, its over-all budget, the manner of exercise of its functions, and the direction of its workforce and to

maintain efficiency provided the exercise of such rights by management does not conflict with specific provisions of this Agreement."

The City observes there are no provisions in the agreement which deal with the procedure for instituting discipline, the standards for discipline, and the specific conduct resulting in discipline. Accordingly, since there are no specific provisions dealing with these concepts, the City believes that, pursuant to this clause, it has the right to adopt rules and regulations covering these concepts. The City observes that it has adopted a comprehensive employment policy, which includes discipline procedures. In the disciplinary procedures, the policy sets standards of discipline, which include as one standard the failure to follow rules of conduct, promulgated by the Commission, and it provides that the procedure to be used is the procedure contained in the Commission Rules. Therefore, it believes, pursuant to the management-rights clause, that these provisions can be used.

It is the Union's position that the question of the relationship of its members with the Commission has previously been resolved in circuit court cases which the City did not appeal. Thus, the Union maintains, apparently pursuant to the doctrine of collateral estoppel, that the City cannot relitigate the issue. The Union relies primarily on *Torrey.*

The original order in *Torrey* was filed on May 8, 1950. It appears from the findings that this *mandamus* action was brought due to the creation of the Commission of Springfield, in order to seek protection for current employees. Accordingly, the court ordered that in the first examination for a position held after June 1, 1950, any person who has held that position for an excess of one year will be given a passing grade, certified for such position, and shall not be required to serve any probationary period.

On July 31, 1950, a modified order was entered. In its findings, the court found that positions with the Department are highly specialized and the apprenticeship with the Union is in excess of the probationary period. It further stated that it:

"[F]inds that such aforesaid positions and classifications of employees are not within the meaning of the said Civil Service Act, exempt from its provisions, and should not be made a part of the Classified Civil Service by the aforesaid Civil Service Commission." (*Torrey* (Cir. Ct. Sangamon Co.), No. 96691, slip op. at 2.)

The court then entered an order similar to the one of May 8, 1950, including a directive to hold examinations for all positions except those found exempt.

On November 24, 1950, the court again entered an order modifying the May 8, 1950, order. This one did not contain the above findings involving the Department employees. The court did find that a "majority of the positions in the Department of Public Property are in specialized trades which require apprenticeships in various labor unions." (*Torrey* (Cir. Ct. Sangamon Co.), No. 96691, slip op. at 2.) The court found that, as to these individuals, they should receive credit against the probationary period for any apprenticeship. In its order, the court stated that exams should be given for all positions "not specifically exempt from the Civil Service Act." *Torrey* (Cir. Ct. Sangamon Co.), No. 96691, slip op. at 5.

■ In the doctrine of collateral estoppel, the parties are precluded from relitigating an issue in a subsequent proceeding where that issue was actually or necessarily decided by a court in an earlier proceeding. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375, 444 N.E.2d 205, 208.) The issue must have necessarily been decided by the court and, if any uncertainty exists, the doctrine will not apply. (*Redfern*, 111 Ill. App. 3d at 376-77, 444 N.E.2d at 209.) As can be seen from the above, it is difficult to determine what question the *Torrey* court actually addressed and what the court's ultimate order was. Thus, by this very uncertainty, the doctrine of collateral estoppel is clearly inapplicable, and the orders have no preclusive effect on the current litigation.

■ We find the City's position to be well taken. The labor agreement contains no provisions involving employee discipline, other than the appeal process which provides for an election of remedies. There is no indication what type of conduct is to be avoided, what standard is to be used in imposing discipline, and what procedures are to be used in implementing it. The management-rights provision explicitly provides that the City is vested with the right to control its operations and to determine its policies, the manner of the exercise of its functions, and the direction of its work force. This authority would clearly include the discipline of its employees. The only limit on this authority is the caveat that the City, by this exercise, must not conflict with any specific provisions of the labor agreement. As noted, there are no such procedures. Thus, the City is allowed to fill that void as it sees fit. Here, it has done so by use of its city employment policy.

Much of the Union's difficulty with this case has been due to its misapprehension of the City's practices. Even if we had concluded that the *Torrey* case had resolved that the Union's members were exempt from the Civil Service Act, the result would be no different. The City is not placing the Union's members under the authority of the Commission. It does not, for example, require them to take civil service

tests or to be placed on Commission eligibility lists. Rather, the City has adopted an extensive employment policy, which has adopted by reference certain of the standards and procedures of the Commission Rules. By doing so, the City does not place the employees under the control of the Commission. Therefore, even assuming the above-stated construction of *Torrey*, the City would not be in contravention of its holding.

We wish to make a couple of points particularly clear. First, we are not holding that the Union's members are under the authority of the Commission in all its aspects. We are simply holding that, absent specific provisions in the agreement otherwise, the City, pursuant to the management-rights provisions of the agreement, can set the standards and procedures for discipline. We note this conclusion is entirely in accord with other circuit court cases on which the Union relies, where the court ordered the City to comply with the appeal procedures for discipline contained in the agreement rather than the City's procedures contained in the employment policy.

Second, we are not holding by this reference to the agreement's management-rights clause that the standards and procedures for discipline are not subject to bargaining. That very question was resolved by *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219. There, Decatur had a Commission, and it felt there was no duty to bargain over disciplinary matters that fell within the scope of the Commission. The court disagreed and held Decatur had a duty to bargain over this subject. (*Decatur*, 122 Ill. 2d at 366, 522 N.E.2d at 1225.) Thus, in the present case, if the Union does not like the disciplinary standards and procedures the City uses, the Union can seek a change in the future bargaining. However, until the agreement is changed, the City can continue to use the standards and procedures contained in its employment policy.

For the above-mentioned reasons, the order of the circuit court of Sangamon County is reversed.

Reversed.

GREEN and STEIGMANN, JJ., concur.