964 N.E.2d 1132 (2011)
358 Ill. Dec. 110
The VILLAGE OF OAK LAWN, Petitioner,
v.
ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and Oak Lawn Professional Firefighters Association, Local 3405, International Association of Firefighters, Respondents.
No. 1-10-3417.
Appellate Court of Illinois, First District, Third Division.
September 7, 2011.
*1133 Jennifer L. Turiello, Michael B. Stillman, Querrey & Harrow, Ltd., Chicago, for Petitioner.
Lisa Madigan, Attorney General, Chicago (Michael A. Scodro, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for Respondent Illinois Labor Relations Bd., State Panel.
Lisa B. Moss, Martin P. Barr, Carmell Charone Widmer Moss & Barr, Chicago, for Respondent Oak Lawn Professional Firefighters Association Local 3405, International Association of Firefighters.

OPINION
Justice MURPHY delivered the judgment of the court, with opinion.
¶ 1 Petitioner, the Village of Oak Lawn, appeals from an order of the Illinois Labor Relations Board, State Panel (Board), in which it determined that petitioner had violated sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(a)(1), (a)(4) (West 2006)) by failing to bargain in good faith over a provision in its collective bargaining agreement with the Oak Lawn Professional Firefighters Association, Local 3405, International Association of Firefighters (Union). On appeal, petitioner contends that the Board erred in determining that it engaged in an unfair labor practice by refusing to bargain with Union where the provision at issue did not concern a mandatory bargaining subject. For the reasons that follow, we affirm.[1]

¶ 2 BACKGROUND
¶ 3 At all relevant times, the Union was the exclusive representative of a bargaining unit comprised of firefighters and fire lieutenants employed by petitioner. Petitioner and the Union were parties to a collective bargaining agreement setting *1134 out the terms and conditions of employment for the bargaining unit from January 1, 2003, through December 31, 2006. Section 7.9 of the agreement, which is titled "Minimum Manning," provided:
a. "The parties recognize that for purposes of efficient response to emergency situations and for reasons of employee safety, sufficient personnel and apparatus need to be maintained in a state of readiness at all times. If the number of on duty personnel falls below the daily minimums, employees shall be hired back pursuant to section 6.4. `Overtime Distribution.'
b. The Village shall exercise its best efforts to maintain the following apparatus minimum manning requirements:
 On each engine: four (4) employees
 One [sic ] each ALS two (2) paramedics (EMTP)
 ambulance:
 One [sic ] each BLS two (2) employees (EMTA or
 ambulance: EMTP)
 On each squad: three (3) employees
c. The Village shall exercise its best efforts to maintain at a minimum the following employees in the described ranks:
twelve (12) Lieutenants
eighteen (18) Engineers
twenty-four (24) Firefighter/Paramedics."
¶ 4 In late 2006 or early 2007, petitioner and the Union commenced negotiations on a collective bargaining agreement to succeed the 2003-06 agreement. The parties were unable to resolve the terms of that agreement and engaged in interest arbitration proceedings pursuant to section 14 of the Act (5 ILCS 315/14 (West 2006)). On July 9, 2008, the Union filed a charge with the Board and against petitioner in which it asserted that petitioner had declared that it was declining to negotiate further over section 7.9, which was to be unilaterally deleted from the contract. The Union alleged that by doing so, petitioner had failed to bargain in good faith and had therefore committed an unfair labor practice in violation of sections 10(a)(1) and 10(a)(4) of the Act. The Executive Director of the Board issued an order holding the charge in abeyance until the completion of the arbitration process.
¶ 5 In November 2008, the parties entered into a successor collective bargaining agreement, in which they acknowledged that petitioner had informed the Union that it considered the matters covered in section 7.9 of the predecessor agreement to constitute permissive topics of bargaining. The parties further acknowledged that the Union disputed petitioner's position on the matter and proposed that the text of section 7.9 be included in the successor agreement. In addition, petitioner agreed that if it were determined to have violated the law by deleting section 7.9, it would be liable to make affected employees whole and would abide by the language of any portion of that section of the predecessor agreement determined to be a mandatory subject of bargaining for the duration of the successor agreement.
¶ 6 On December 19, 2008, the Union filed a motion to issue a complaint for hearing in which it asserted that the parties had agreed that the issue of whether minimum manning was a mandatory or permissive topic of bargaining was to be determined through legal proceedings that had been initiated before the Board. The Union requested the Board issue a complaint for hearing that included an allegation that petitioner had violated the terms of the parties' minimum manning clause in violation of sections 10(a)(1) and 10(a)(4) of the Act. On March 11, 2009, the Board granted the Union's motion and issued a complaint for hearing.
¶ 7 The parties submitted numerous stipulations and joint exhibits to Administrative Law Judge (ALJ) Sylvia Rios. On *1135 October 23, 2009, ALJ Rios entered a recommended decision and order in which she concluded that "[t]he topic of minimum manning involves wages, hours or working conditions within the meaning of Section 7 of the Act, and is thereby a mandatory subject of bargaining." In doing so, ALJ Rios initially noted that "there is no dispute that [petitioner] failed to bargain with [the Union] regarding the subject of minimum manning" and that "the focus of the inquiry herein is whether the topic of minimum manning is a mandatory subject of bargaining."
¶ 8 ALJ Rios cited to section 14(i) of the Act, which provided that an arbitration decision "shall be limited to wages, hours, and conditions of employment," and set forth a list of specific topics that could not be resolved by arbitration. 5 ILCS 315/14(i) (West 2006). ALJ Rios determined that those excluded topics could not be mandatory subjects of bargaining, reasoning that "[w]hen there is no right to resolve such an issue, it is thought impossible that there could be a duty to bargain about it." Based on the plain language of section 14(i), ALJ Rios found that there was no prohibition against presenting the issue of "manning" to interest arbitration and that a presumption that the legislature intended for "manning" to be a mandatory bargaining subject for firefighters arose where it expressly prohibited it as a mandatory bargaining subject for peace officers, but did not do so for firefighters. ALJ Rios also found that the topic of minimum manning related to wages, hours, and working conditions and determined that it was therefore a mandatory bargaining subject.
¶ 9 ALJ Rios then addressed petitioner's contention that minimum manning was not a mandatory bargaining subject because section 14(i) prohibited an arbitrator from addressing "the total number of employees employed by the department" (id.) and rejected that argument. In doing so, she found that the plain language of section 14(i) showed that the legislature identified "manning" as a separate topic from that concerning the total number of employees employed by the department and found that "the issue of manning relate[d] to the determination of manpower levels at a given point in time."
¶ 10 ALJ Rios then addressed petitioner's further contention that minimum manning was not a mandatory bargaining subject because it related to standards of service and was therefore "an issue of inherent managerial authority." ALJ Rios employed the balancing test set forth by our supreme court in Central City Education Ass'n, IEA/NEA v. Illinois Educational Labor Relations Board, 149 Ill.2d 496, 523, 174 Ill.Dec. 808, 599 N.E.2d 892 (1992), and determined that minimum manning was a subject of mandatory bargaining. In doing so, she found that "minimum manning plainly concerns the wages, hours and terms and conditions of employment of the employees in the unit" and that even if it was a matter of inherent managerial authority, "the employees' interest in bargaining significantly outweighs any burden that such bargaining would impose on [petitioner's] authority."
¶ 11 On October 29, 2010, the Board entered a decision and order in which it agreed that minimum manning was a mandatory subject for bargaining and affirmed and adopted ALJ Rios's recommended decision and order. On November 22, 2010, petitioner petitioned this court to review the Board's decision and order.

¶ 12 ANALYSIS
¶ 13 In this appeal, petitioner contends that the Board erred in determining that its refusal to engage in collective bargaining with the Union over the inclusion *1136 of section 7.9 in the successor collective bargaining agreement amounted to an unfair labor practice. In reviewing the decision of an administrative agency, this court will review the agency's factual findings to ascertain whether such findings are against the manifest weight of the evidence, review its decisions on questions of law de novo, and review its decisions on mixed questions of law and fact for clear error. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill.2d 200, 209-10, 319 Ill.Dec. 887, 886 N.E.2d 1011 (2008).
¶ 14 It is an unfair labor practice for a public employer to interfere with, restrain, or coerce its employees in the exercise of their rights guaranteed by the Act (5 ILCS 315/10(a)(1) (West 2006)) or to refuse to bargain collectively with their exclusive representative (5 ILCS 315/10(a)(4) (West 2006)). An employer's refusal to negotiate over a mandatory subject of bargaining constitutes an unfair labor practice. Forest Preserve District of Cook County v. Illinois Labor Relations Board, 369 Ill.App.3d 733, 754, 308 Ill.Dec. 166, 861 N.E.2d 231 (2006).
¶ 15 Petitioner asserts that it did not engage in an unfair labor practice by refusing to bargain over section 7.9 because the matters covered therein were not mandatory bargaining subjects. Petitioner initially maintains that it agrees with the Board that "manning" is a mandatory subject of bargaining with respect to firefighters and that its duty to bargain over that topic arises from section 14(i) of the Act, which "determines the negotiability of certain subjects of bargaining for firefighter and peace officer bargaining units." Petitioner asserts, however, that section 7.9 does not concern "manning" as that term is used in section 14(i) and that the matters covered therein are therefore not mandatory bargaining subjects. In doing so, petitioner maintains that the legislature intended for the term "manning" to refer only to apparatus manning in section 14(i). The Board responds that "manning" "concerns manpower levels at a given point in time," and the Union asserts that the term "must be read broadly to apply to all types of manning matters including, but not limited to, apparatus manning, shift manning, and the minimum numbers [sic] of firefighters in each rank."
¶ 16 Initially, we disagree with the assertions that petitioner's duty to bargain over "manning" arises from section 14(i) or that section 14(i) is determinative as to whether and to what extent "manning" is a mandatory bargaining subject. Section 7 of the Act provides that a public employer has an obligation to bargain "over any matter with respect to wages, hours and other conditions of employment, [sic] not specifically provided for in any other law." 5 ILCS 315/7 (West 2006). Section 4, however, provides that an employer is not required "to bargain over matters of inherent managerial policy." 5 ILCS 315/4 (West 2006).
¶ 17 In general, a court will apply the balancing test set forth by our supreme court in Central City, 149 Ill.2d at 523, 174 Ill.Dec. 808, 599 N.E.2d 892, to determine whether a matter is a mandatory subject of bargaining. County of Cook v. Illinois Labor Relations Board Local Panel, 347 Ill.App.3d 538, 545, 283 Ill.Dec. 8, 807 N.E.2d 613 (2004). Pursuant to that test, an issue is a mandatory subject of bargaining if it concerns wages, hours, or terms and conditions of employment and is not a matter of inherent managerial authority. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill.2d 191, 206, 229 Ill.Dec. 522, 692 N.E.2d 295 (1998). In the event a matter concerns wages, hours, or terms and conditions of employment *1137 and is also a matter of inherent managerial authority, that matter will be deemed a mandatory bargaining subject if the benefits that bargaining will have on the decision-making process outweigh the burdens it will impose on the employer's authority. Id. Thus, the Central City balancing test takes into account sections 7 and 4 of the Act and provides a mechanism by which a court or the Board can determine whether a topic that meets the conditions of both sections is a mandatory bargaining subject.
¶ 18 Section 14 provides for interest arbitration proceedings and does not directly address the issue of whether a topic is a mandatory bargaining subject. 5 ILCS 315/14 (West 2006). However, section 14(i) provides that an arbitration decision "shall be limited to wages, hours, and conditions of employment" and sets forth a list of specific topics that may not be resolved by an arbitrator. 5 ILCS 315/14(i) (West 2006). ALJ Rios reasoned, and we agree, that a topic that is excluded from arbitration by section 14(i) cannot be a mandatory bargaining subject. Thus, the Central City balancing test will generally be applied to determine whether a matter is a mandatory bargaining subject unless that matter is excluded from arbitration by section 14(i), in which case application of the Central City test is unnecessary because such matters cannot be mandatory bargaining subjects.
¶ 19 "Manning" is among those listed topics that may not be included in an arbitration decision involving peace officers pursuant to section 14(i), but is not among those listed topics for firefighters. Id. Thus, we agree with ALJ Rios and the Board that the plain language of section 14(i) shows that there is no statutory prohibition against classifying "manning" as a mandatory bargaining subject.
¶ 20 However, section 14(i) does not identify "manning," or any other topic, as a mandatory bargaining subject. As stated earlier, section 14(i) only relates to the classification of a matter as a mandatory bargaining subject insofar as it precludes certain listed topics from being classified as such. Thus, section 14(i) does not and cannot provide a basis for classifying "manning" as a mandatory bargaining subject, and the assertion that "manning" is a mandatory bargaining subject pursuant to section 14(i) is incorrect.
¶ 21 We therefore determine that even if petitioner is correct that section 7.9 concerns matters that go beyond the concept of "manning" as that term is used in section 14(i), such a conclusion has no bearing on whether the matters covered in section 7.9 are mandatory bargaining subjects. As such, we conclude that petitioner's challenge to the Board's decision and order based on the language of section 14(i) cannot succeed.
¶ 22 In reaching that conclusion, we note that ALJ Rios stated in her recommended decision and order that the fact that section 14(i) specifically prohibited "manning" from arbitration as to peace officers, but did not do so as to firefighters, led to the presumption that the legislature intended for "manning" to be a mandatory bargaining subject as to firefighters. However, ALJ Rios ultimately determined that minimum manning was a mandatory bargaining subject because it related to wages, hours, and working conditions, which are mandatory bargaining subjects pursuant to section 7 (5 ILCS 315/7 (West 2006)), and was not barred from being a mandatory bargaining subject by section 14(i). ALJ Rios subsequently applied the Central City balancing test and determined that even if minimum manning was a matter of inherent managerial authority, it was a mandatory bargaining subject because the employees' *1138 interest in bargaining significantly outweighed any burden that such bargaining would impose on petitioner's authority. The record thus shows that ALJ Rios applied the generally used Central City test to reach the determination that minimum manning was a mandatory bargaining subject and did not rely solely on section 14(i).
¶ 23 Further, our conclusion does not conflict with this court's holding in County of Cook, 347 Ill.App.3d 538, 283 Ill.Dec. 8, 807 N.E.2d 613, to which petitioner cites in support of its assertion that the application of the Central City balancing test is unnecessary in this case because section 14(i) determines whether "manning" is a mandatory bargaining subject. Initially, we agree with the court in County of Cook that section 14(i) "specifically determines the negotiability of certain subjects of bargaining for firefighter and peace officer bargaining units," in that topics that are excluded from arbitration by section 14(i) cannot be mandatory bargaining subjects. Id. at 545-46, 283 Ill.Dec. 8, 807 N.E.2d 613. In addition, we note that after concluding that the petitioner was not prohibited from bargaining over the subject of residency by section 14(i), the court in County of Cook proceeded to apply the Central City balancing test and determined the matter was a mandatory subject of bargaining, just as ALJ Rios did in this case. Id. at 550-53, 283 Ill.Dec. 8, 807 N.E.2d 613. Thus, we agree with the holding in County of Cook that section 14(i) is determinative as to whether a topic is a mandatory bargaining subject where it specifically excludes that topic from arbitration. We also agree that a topic that is not excluded from being a mandatory bargaining subject by section 14(i) will be deemed so if it then passes the Central City balancing test.
¶ 24 Petitioner also asserts that it cannot be required to bargain over section 7.9 because that provision sets forth a requirement for "the total number of employees to be employed by the department," which is among those topics excluded from being included in an arbitration decision involving firefighters by section 14(i). 5 ILCS 315/14(i) (West 2006). In doing so, petitioner maintains that section 7.9 has been interpreted by an arbitrator in a separate proceeding as requiring it to maintain a minimum staffing level of 21 personnel per shift and that this court recently affirmed that interpretation in Village of Oak Lawn v. Oak Lawn Professional Firefighters Ass'n, Local 3405 IAFF, No. 1-09-3575 (June 30, 2011) (unpublished order under Supreme Court Rule 23), petition for leave to appeal pending, No. 112791 (filed Aug. 4, 2011).
¶ 25 However, while we agree with petitioner that section 7.9 of the agreement has been interpreted as including a minimum shift staffing requirement, section 14(i) of the Act does not exclude that topic from those which may be included in an arbitration decision. Instead, section 14(i) excludes the topic of "the total number of employees employed by the department" from arbitration. 5 ILCS 315/14(i) (West 2006). A minimum shift staffing requirement is necessarily different from a requirement as to the total number of employees in a fire department, as a shift staffing requirement regulates the hours and conditions of employment of a subset of the total number of employees. Thus, although a shift staffing requirement incidentally affects the total number of employees to be employed by a fire department, we conclude that requiring petitioner to negotiate over section 7.9 does not run afoul of section 14(i).
¶ 26 In addition, we note that petitioner has not asserted that the matters covered by section 7.9 do not relate to *1139 wages, hours, and other conditions of employment in this appeal. We also note that petitioner briefly asserts in its brief that section 7.9 interferes with fundamental management rights. However, that fact is relevant as to the application of the Central City balancing test, and petitioner has not challenged the application of that test by ALJ Rios in this appeal. As such, we conclude that the decision and order of the Board determining that petitioner violated sections 10(a)(1) and 10(a)(4) of the Act by failing to bargain in good faith over section 7.9 is not clearly erroneous.

¶ 27 CONCLUSION
¶ 28 Accordingly, we affirm the decision and order of the Board.
¶ 29 Affirmed.
Presiding Justice QUINN and Justice NEVILLE concurred in the judgment and opinion.
NOTES
[1] In addition to the briefs submitted by the parties, we have also received and considered briefs filed as amici curiae by the Illinois Municipal League and the Associated Firefighters of Illinois.