2012 COA 138

**DENVER FIREFIGHTERS LOCAL NO. 858, IAFF, AFL–CIO, Plaintiff–Appellee,**

v.

**CITY & COUNTY OF DENVER; and Alex J. Martinez, in his official capacity as Manager of Safety for the City & County of Denver, Defendants–Appellants.**

**No. 11CA1770.**

Colorado Court of Appeals, Div. VI.

Aug. 16, 2012.

Buescher, Goldhammer & Kelman, P.C., Thomas B. Buescher, Denver, Colorado, for Plaintiff–Appellee.

Douglas J. Friednash, City Attorney, Robert D. Nespor, Assistant City Attorney, Franklin A. Nachman, Assistant City Attorney, Jennifer L. Jacobson, Assistant City Attorney, Denver, Colorado, for Defendants–Appellants.

Opinion by Chief Judge DAVIDSON.

¶ 1 Defendants, the City and County of Denver (the City) and Alex J. Martinez, the Manager of Safety (Manager), appeal from the trial court's order granting a preliminary injunction in favor of plaintiff, Denver Firefighters Local No. 858, IAFF, AFL–CIO. The primary issue on appeal is whether plaintiff has demonstrated a reasonable probability of success on the merits, which requires us to review, as a matter of first impression in Colorado, the trial court's determination that a discipline matrix is a mandatory subject of collective bargaining. We affirm.

## I.  Background

¶ 2 The Denver firefighters are City employees, subject to the supervision and control of the Manager, who is appointed by the Mayor. *See* Denver Charter §§ 2.6.1, 2.6.2.

In 1971, Denver voters passed an amendment to the City Charter, granting Denver firefighters the right to collectively bargain with the City over certain working conditions. *See* Denver Charter § 9.7.3.

¶ 3 Plaintiff is the firefighters' exclusive bargaining agent, and the parties have had a collective bargaining agreement every year since the amendment. *See* Denver Charter § 9.7.4; *City & Cnty. of Denver v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1034 (Colo.1983) (*Local No. 858*). The parties' current collective bargaining agreement (the Agreement) has been in effect since January 1, 2010 and will expire December 31, 2012.

¶ 4 The dispute underlying this appeal arose from defendants' proposed unilateral creation and implementation of a discipline matrix for the Fire Department. As described by the parties, a discipline matrix is a system that lists prohibited conduct and the corresponding disciplinary sanctions to be imposed through a progressive system based on the severity and frequency of an employee's misconduct.

¶ 5 The Fire Department does not have a discipline matrix, although it has a code of conduct and a system for imposing discipline, which has been in place for decades. Under the current disciplinary system, when a firefighter violates the code of conduct, the Fire Chief issues a written report containing the charges, the evidence of and reasons for the charges, and the specific disciplinary action ordered. Denver Charter § 9.4.14. The Manager then reviews the report and may approve, modify, or disapprove the recommended disciplinary action. *Id.*

¶ 6 Defendants' proposed creation and implementation of a discipline matrix would change the current discipline system. The issue here is whether defendants may do so without first negotiating with plaintiff.

¶ 7 In October 2010, the Manager (then Mary Malatesta, now Alex Martinez) indicated that she would like to form a Discipline Advisory Group (DAG) to create a discipline matrix for the Fire Department. Plaintiff promptly responded, asserting that a disci-

pline matrix is a mandatory subject of collective bargaining. The Manager did not reply.

¶ 8 In March 2011, after being advised a second time that the Manager intended to create a discipline matrix, plaintiff sent essentially the same response. Again, the Manager did not reply.

¶ 9 In May 2011, plaintiff learned that the DAG had been created and would begin holding meetings. Plaintiff attended the first meeting and, again, asserted that a discipline matrix is a mandatory subject of collective bargaining. Defendants disagreed, telling plaintiff they would continue with the process to create the matrix.

¶ 10 Plaintiff filed this action in the trial court and, as relevant here, requested the issuance of a preliminary injunction. Following a hearing, the trial court granted plaintiff's motion, issuing an order enjoining defendants from implementing a disciplinary matrix for Denver firefighters without first negotiating with plaintiff. The trial court's decision focused on which Charter provision, section 9.4.13 or 9.7.3, prevailed, interpreting these provisions to require the City to collectively bargain over disciplinary matters because (1) disciplinary matters are terms and conditions of employment under section 9.7.3 ("Firefighters shall have the right to bargain collectively ... as to ... working conditions, and all other terms and conditions of employment, except ... organization of the Fire Department and except pensions...."); (2) the absence of a discipline exception in section 9.7.3 was intentional; and (3) the words "set forth" in section 9.4.13 ("The rules governing the conduct of [Fire Department members] shall be set forth as written rules and regulations....") mean that the City has the right to implement rules of conduct for firefighters, but does not have the right to write or draft them unilaterally.

¶ 11 The court concluded, therefore, that plaintiff had demonstrated a reasonable probability of success in establishing that, pursuant to the Charter and the Agreement, the proposed discipline matrix is a mandatory subject of collective bargaining.

¶ 12 Defendants appeal. Their request for a stay of the injunction pending appeal was denied by the trial court and by a motions division of this court.

## II. Preliminary Injunction: Standard of Review

¶ 13 A preliminary injunction is a remedy designed to preserve the status quo and to protect a party's rights pending a trial on the merits. *Anderson v. Pursell*, 244 P.3d 1188, 1196 (Colo.2010). To grant a preliminary injunction, the moving party must show that (1) it has a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury exists that may be prevented by injunctive relief; (3) there is no plain, speedy, and adequate remedy at law; (4) there is no disservice to the public interest; (5) the balance of equities favors the injunction; and (6) the injunction will preserve the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo.1982).

¶ 14 It is within the trial court's sound discretion to decide whether to grant or deny a preliminary injunction, and we will not overturn that decision unless it is manifestly arbitrary, unreasonable, or unfair. *Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 6 (Colo.App.2009). However, where the issues present only legal questions, our review is de novo. *Dallman v. Ritter*, 225 P.3d 610, 620–21 (Colo.2010); *State v. Cash Now Store, Inc.*, 31 P.3d 161, 164 (Colo.2001).

¶ 15 Here, the first *Rathke* factor, whether the plaintiff has shown a reasonable probability of success on the merits, presents a question of law. *See MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo. 2010). Therefore, we review the trial court's finding that plaintiff met the first *Rathke* factor de novo, but, because the remaining factors present questions of fact, we defer to the trial court's determination of them. *See Cook v. City & Cnty. of Denver*, 68 P.3d 586, 588 (Colo.App.2003).

## III. Probability of Success on the Merits: The Proposed Discipline Matrix is a Mandatory Subject of Collective Bargaining

¶ 16 We agree with the trial court's conclusion that the proposed discipline matrix is a

mandatory subject of collective bargaining. However, we do so on different reasoning. *See Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 7, — P.3d —, 2012 WL 150079.

### A. The Charter Determines the Parties' Rights on the Subject of Discipline

¶ 17 Collective bargaining is the process through which employees negotiate exceptions to the government employer's traditional managerial authority to supervise and direct its public employee workforce. *See Hogan v. Kokosing Constr. Co.*, 836 F.Supp.2d 583, 590 (S.D.Ohio 2011) (" 'Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them.' " (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))); *see also First Nat'l Maint. Corp. v. N.L.R.B.*, 452 U.S. 666, 680–81, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981) (collective bargaining "is not intended to serve either party's individual interest, but to foster in a neutral manner a system in which the conflict between these interests may be resolved").

¶ 18 Here, the subject of discipline has not been included in the parties' previous collective bargaining negotiations. And the only mention of disciplinary matters in the Agreement is to exclude them from the Agreement's grievance procedure. Thus, in the absence of a negotiated provision on discipline, and in light of the parties' arguments, we look to the provisions of the Charter to determine the parties' rights.

### 1. Under the Charter, Discipline is a Subject of Management Authority

Charter section 9.4.13 provides:

The rules governing the conduct of members of the Classified Service in the Fire and Police Departments shall be set forth as written rules and regulations by the Chief of each of the respective departments with the approval of the Manager of Safety.... Any member of the Classified Service shall be subject to reprimand, discharge, reduction in grade, fine and/or suspension for a violation of such rules and regulations.

The section immediately following, 9.4.14, describes the procedure for implementing disciplinary procedures against a firefighter who violates a rule or regulation.

¶ 19 Contrary to the trial court's determination that the words "set forth" in section 9.4.13 limit defendants' right only to implement, not to write, the rules of conduct for firefighters, we conclude that the plain language of these two sections grants to defendants the right to create as well as to enforce the rules governing firefighter conduct. *See MDC Holdings*, 223 P.3d at 717 (we apply charter language as written unless doing so would lead to an absurd result); *see also Local No. 858*, 663 P.2d at 1036 ("The elected officials of the home rule city of Denver have the authority to legislate upon and regulate matters relating to the terms and conditions of employment for municipal employees."); *cf. Cook*, 68 P.3d at 589 ("The charter empowers the chief of police to maintain administrative control over the police department and to initiate disciplinary action involving members of the police force.").

¶ 20 We note, in addition, that in the Agreement's Management Rights clause, the City reserved "the sole and exclusive right to exercise all rights or functions of management," including, "the establishment and enforcement of Fire Department Directives and Guidelines." Accordingly, we conclude that discipline is a management right, which the City, thus far, has retained the authority to exercise. *See Hogan*, 836 F.Supp.2d at 590 (" 'on issues not discussed in the Agreement, management retains discretion' ") (quoting *United Steelworkers*, 363 U.S. at 583, 80 S.Ct. 1347); *Local No. 193, Int'l Bhd. of Elec. Workers v. City of Springfield*, 211 Ill.App.3d 166, 155 Ill.Dec. 606, 569 N.E.2d 1217, 1220–21 (1991) (where the collective bargaining agreement is silent on disciplinary matters, management retains its right to set the standards and procedures for discipline).

### 2. Under the Charter, as a Term and Condition of Employment, Discipline is a Subject of Collective Bargaining

Charter section 9.7.3 provides:

Firefighters shall have the right to bargain collectively with the City and County of Denver and to be represented by an employee organization in such collective bargaining as to wages, rates of pay, hours, grievance procedure, working conditions, and all other terms and conditions of employment, except the table of organization of the Fire Department and except pensions.

¶ 21 A matter is considered a term and condition of employment if it settles an aspect of the employer-employee relationship. *First Nat'l Maint. Corp.*, 452 U.S. at 676, 101 S.Ct. 2573; *N.L.R.B. v. Wooster Div. of Borg–Warner Corp.*, 356 U.S. 342, 350, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958) (mandatory subjects are those that regulate the relations between the employer and its employees); *Vt. State Emps. Ass'n v. State*, 185 Vt. 363, 971 A.2d 641, 649 (2009) (mandatory subjects are those that relate to the relationship between the employer and its employees); *see Scottsbluff Police Officers Ass'n, F.O.P. Lodge 38 v. City of Scottsbluff*, 282 Neb. 676, 805 N.W.2d 320, 328 (2011) ("A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on management prerogative."); *Omaha Police Union Local 101 v. City of Omaha*, 274 Neb. 70, 736 N.W.2d 375, 382 (2007) (same).

¶ 22 We agree with the trial court that the subject of discipline is a term and condition of employment within the meaning of section 9.7.3.

¶ 23 Discipline generally is imposed by the employer when an employee violates a given code of conduct and, therefore, any disciplinary system will affect how the employer and its employees interact with each other and, to some extent, determine whether that relationship continues. *See Vt. State Emps. Ass'n*, 971 A.2d at 649 ("Matters pertaining to employee discipline clearly concern the employer-employee relationship. . . .").

¶ 24 Indeed, most courts addressing the issue conclude that disciplinary matters are terms and conditions of employment. *See, e.g., Toledo Blade Co.*, 343 N.L.R.B. 385, 387 (2004) ("It is well established that an employer's disciplinary system constitutes 'a term of employment that is a mandatory subject of bargaining.'" (quoting in part *Migali Industries, Inc.*, 285 N.L.R.B. 820, 821 (1987))); *Greater Bridgeport Transit Dist. v. State Bd. of Labor Relations*, 232 Conn. 57, 653 A.2d 151, 155 (1995) (similar); *City of Miami v. F.O.P., Miami Lodge 20*, 571 So.2d 1309, 1322 (Fla.Dist.Ct.App.1989) (similar), *approved*, 609 So.2d 31 (Fla.1992); *Univ. of Haw. Prof'l Assembly v. Tomasu*, 79 Hawai'i 154, 900 P.2d 161, 170 (1995) (similar); *Omaha Police Union Local 101*, 736 N.W.2d at 382 (similar); *Union Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Valley Lodge No. 112*, 146 Ohio App.3d 456, 766 N.E.2d 1027, 1031 (2001) (similar); *Blackhawk Teachers' Fed'n Local 2308 v. State Emp't Relations Comm'n*, 109 Wis.2d 415, 326 N.W.2d 247, 260–61 (App.1982) (policy provision that referred to sanctions that could be imposed on an employee only because of the employment relationship was held to relate to employment conditions).

## B. Conflicting Provisions: Balancing Test

¶ 25 We have concluded that, under section 9.7.3 of the Charter, the subject of discipline is a term and condition of employment. We have also concluded that, under section 9.4.13, it is a managerial prerogative. At first blush, these Charter provisions appear equally availing. Consequently, plaintiff and defendants each rely on various rules of statutory construction to urge their respective resolution of this apparent conflict.

¶ 26 However, we disagree with both. Instead, informed by numerous cases from other jurisdictions, in order to resolve the issue and avoid the conflict, we choose to apply a balancing test that weighs the impact that mandated collective bargaining on the subject will have on each of the parties' interests. *See Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 892 (Colo.2011) (courts must attempt to harmonize statutes to effectuate the legislative intent).

### 1. The Parties' Arguments

¶ 27 On the assumption that the provisions cannot be reconciled, defendants' position is that section 9.4.13 prevails because it is more specific than section 9.7.3. Plaintiff's response is that section 9.7.3 prevails because it was enacted later in time than section 9.4.13.

¶ 28 However, to adopt plaintiff's "later in time" approach would result in the collective bargaining section, section 9.7.3, prevailing over any previously enacted Charter sections that relate in any way to the broad category of "terms and conditions of employment." Such a result would essentially strip the City of any authority to regulate public employment unless it had specifically bargained for the right to do so. This certainly is not the result the drafters intended.

¶ 29 Defendants' "specific versus general" approach is similarly unsatisfying. Both sections are fairly broad, and we are not persuaded that either one is more specific than the other. Moreover, even if we assume that section 9.4.13 is more specific and that it, therefore, prevails, such an interpretation would result in the City never having to bargain over any matter related to firefighter or police conduct, regardless of its effect on the terms and conditions of employment. Again, this cannot be the result the drafters intended.

¶ 30 To the contrary, reading the relevant provisions of the Charter as a whole, we conclude they are intended to grant and implement collective bargaining rights while, at the same time, to preserve to the City its right and responsibility to set public policy. As the parties' arguments reveal, this intent could be severely thwarted by an interpretation that rested merely on default rules of statutory construction.

### 2. Other Jurisdictions' Balancing Tests

¶ 31 In the context of collective bargaining, the majority of courts from other jurisdictions confronted with a similar dilemma do not rely on rules of statutory construction, but harmonize conflicting provisions, like those here, by the use of a court-developed balancing test. *See, e.g., Borough of Ellwood City v. Pa. Labor Relations Bd.*, 606 Pa. 356, 998 A.2d 589, 600 (2010) ("[O]nce it is determined that ... the topic is rationally related to the terms and conditions of employment, ... the proper approach is to inquire whether collective bargaining over the topic would unduly infringe upon the public employer's essential managerial responsibilities."); *Cnty. of King v. Wash. State Pub. Emp't Relations Comm'n*, 94 Wash.App. 431, 972 P.2d 130, 133 (1999) ("When ... the disputed issue could fall into either category, we must balance the relationship the subject bears to personnel matters against the extent to which the issue pertains to fundamental management prerogatives. We must then determine which characteristic predominates." (footnote omitted)).

¶ 32 Although the test varies slightly among jurisdictions, the analysis conducted is essentially the same. That is, the courts undertake a context-specific inquiry, examining the competing interests of the parties, to determine in whose favor the balance falls. *See Vill. of Oak Lawn v. Illinois Labor Relations Bd.*, 358 Ill.Dec. 110, 964 N.E.2d 1132, 1136–37 (Ill.App.Ct.2011) ("In the event a matter concerns wages, hours, or terms and conditions of employment and is also a matter of inherent managerial authority, that matter will be deemed a mandatory bargaining subject if the benefits that bargaining will have on the decision-making process outweigh the burdens it will impose on the employer's authority."); *Fraternal Order of Police, Chicago Lodge No. 7 v. Illinois Labor Relations Bd.*, 356 Ill.Dec. 466, 961 N.E.2d 855, 862 (Ill.App.Ct.2011) (same); *see also In re Kennedy*, 162 N.H. 109, 27 A.3d 844, 848 (2011) (if the proposal is integrated into a negotiated agreement, it may not interfere with public control of governmental functions); *Union Twp. Bd. of Trustees*, 766 N.E.2d at 1030–31 (similar).

¶ 33 In so doing, some courts require that, for the balance to fall in favor of a given party, the subject at issue must "primarily" or "predominately" relate to that party's rights and interests. *See Kennedy*, 162 N.H. 109, 27 A.3d at 848 ("[T]he proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy." (quoting *In re State*, 138

N.H. 716, 647 A.2d 1302, 1306 (1994))); *cf. Metro. Technical Cmty. Coll. Educ. Ass'n v. Metro. Technical Cmty. Coll. Area,* 203 Neb. 832, 281 N.W.2d 201, 203 (1979) ("[B]oards should not be required to enter negotiations on matters which are predominately matters of ... policy, management prerogatives, or statutory duties....").

¶ 34 Others require that the subject must have a "substantial" or "significant" impact on the prevailing party's rights and interests. *See Electri–Flex Co. v. N.L.R.B.,* 570 F.2d 1327, 1333 (7th Cir.1978) (subject is mandatory if it results in a significant change in working conditions); *Portland Fire Fighters' Ass'n, Local 43 v. City of Portland,* 245 Or.App. 255, 263 P.3d 1040, 1045 (2011) (to be a mandatory subject of bargaining, the proposed change must have a significant impact, either directly or derivatively, on working conditions); *cf. Fraternal Order of Police, Lodge No. 5 v. Pennsylvania Labor Relations Bd.,* 727 A.2d 1187, 1190 (Pa. Commw.Ct.1999) (if "the managerial policy ... substantially outweigh[s] any impact an issue will have on the performance of the duties of the ... employees," the subject is not a mandatory subject of bargaining).

¶ 35 Still others impose no such heightened showing, requiring only that the prevailing party's interests, or the impact of the subject on those interests, outweigh the interests of the other party. *See, e.g., Vill. of Oak Lawn,* 358 Ill.Dec. 110, 964 N.E.2d at 1136–37.

### 3. Balancing Test: Our Version

■ ¶ 36 We are persuaded by these authorities that when, because of apparently conflicting provisions, a subject is both a managerial prerogative and a term and condition of employment, adopting a balancing test that weighs the parties' respective interests will best give effect to the intent of both provisions. However, we find it unhelpful to include in our balancing test such limiting words as "primarily," "significantly," and the like. Imposing this type of standard seem superfluous because, if one party's interests outweigh those of the other party, the subject at issue will necessarily "primarily" affect those interests and more "significantly"

impact that party's rights, duties, and interests.

¶ 37 Therefore, we prefer, and accordingly adopt, the simpler version of the test as framed by the Illinois courts: If the balance falls in favor of the employees, the subject is a mandatory subject of collective bargaining; if the balance falls in favor of the employer, it is not. *See, e.g., id.*

■ ¶ 38 Furthermore, given the fact-specific nature of this analysis, and recognizing that the factors relevant to a court's balancing will vary depending on the circumstances of the case before it, we decline to mandate a particular set of factors a court must consider in balancing the parties' interests. *See, e.g., People v. Shreck,* 22 P.3d 68, 77 (Colo. 2001); *Martinelli v. Dist. Court,* 199 Colo. 163, 171, 612 P.2d 1083, 1089 (1980). However, as guidance, we provide the following nonexclusive list of factors a court may consider: the nature of the employees' work; how narrowly tailored the subject is to the essential functioning of the enterprise; whether the subject implicates the public welfare; the reasons underlying any proposed changes to the subject; whether the subject more directly impacts individual employees' welfare or the operation of the enterprise as a whole; and whether the benefit the employees receive by bargaining outweighs the burden bargaining imposes on the employer's ability to conduct business. *See First Nat'l Maint. Corp.,* 452 U.S. at 679, 101 S.Ct. 2573; *F.O.P Miami Lodge 20,* 571 So.2d at 1324–25; *Metro. Technical Cmty. Coll. Educ. Ass'n,* 281 N.W.2d at 205; *Morris Cnty. Sheriff's Office,* 418 N.J.Super. 64, 12 A.3d at 218; *Ellwood City,* 998 A.2d at 599–600.

■ ¶ 39 Depending on the facts of the case before it, a court need not consider any or all of these factors, and may consider additional factors not listed here. *See Harris v. Denver Post Corp.,* 123 P.3d 1166, 1175 (Colo.2005); *Shreck,* 22 P.3d at 78–79, 83. However, the court should set forth specific findings and conclusions as to the factors it considered and its balancing of those factors. *Cf. Shreck,* 22 P.3d at 78–79, 83; *People v. Bushu,* 876 P.2d 106, 108 (Colo.App.1994).

## C. Application of the Balancing Test

¶ 40 The City is interested in maintaining its authority to perform what it views as its managerial prerogative to direct firefighter conduct. *See F.O.P Miami Lodge 20*, 571 So.2d at 1322 (managerial authority includes those subjects that fundamentally impact on the functioning of an enterprise; that are fundamental to the basic direction of an enterprise); *Ellwood City*, 998 A.2d at 599–600 (managerial prerogatives concern "subjects which are essential to an employer's managing of its employees and the running of its enterprise, [and] also ... matters which strike at the heart of policy decisions that directly implicate the public welfare").

¶ 41 As other courts have noted, one of a government employer's essential managerial responsibilities is to ensure that civil service employees, such as firefighters, behave appropriately and that, when on duty, they are able safely and efficiently to carry out their duties in protecting the public. *See, e.g., F.O.P. Miami Lodge 20*, 571 So.2d at 1325 ("The safety of the public depends upon the proper discharge of the police officers' duties.... Thus, it is apparent that there is a direct connection between an officer's job duties and the public safety."). To meet this responsibility, the City must be able to establish policy guidelines on conduct and discipline, as such guidelines will affect how firefighters perform their duties and present themselves to the public. *See Morris Cnty. Sheriff's Office v. Morris Cnty. Policemen's Benevolent Ass'n, Local 298*, 418 N.J.Super. 64, 12 A.3d 214, 221 (N.J.Super.Ct.App.Div.2011) (" '[W]hat distinguishes the State from private employers is the unique responsibility to make and implement public policy.' " (quoting *Local 195, IFPTE v. State*, 88 N.J. 393, 443 A.2d 187, 191 (1982))).

¶ 42 Plaintiff is interested in ensuring that the firefighters have a meaningful voice in discussing any changes that will affect their working conditions. As we understand it, because the discipline matrix will define the firefighters' code of conduct, it will affect how a firefighter behaves while on duty as well as, to some extent, how he or she behaves while off duty. *See Chicago Tribune Co. v. N.L.R.B.*, 974 F.2d 933, 935 (7th Cir.1992) (regulation of conduct off the job could be related to conduct on the job; thus, a provision regulating off duty behavior is a term of employment); *see also Portland Fire Fighters' Ass'n*, 263 P.3d at 1045 (a subject is bargainable if it directly or derivatively affects a working condition). It will also affect such terms and conditions of employment as, for example, rank, pay, and continued employment by providing the standard for imposing progressive sanctions. *See Blackhawk Teachers' Fed'n*, 326 N.W.2d at 252, 261 ("Employer-imposed discipline threatens job security and is primarily related to a teacher's conditions of employment.").

¶ 43 Thus, the discipline matrix will directly impact the firefighters' terms and conditions of employment. *See Oak Park Pub. Safety Officers Ass'n v. City of Oak Park*, 277 Mich.App. 317, 745 N.W.2d 527, 533 (2007) (although a given subject may be a managerial decision, "the impact of such managerial decisions—on, for example, employee workload or safety—may result in conditions that come within the ambit of the phrase 'other terms and conditions of employment' "); *Beaverton Police Ass'n v. City of Beaverton*, 194 Or.App. 531, 95 P.3d 1160, 1162 (2004) (same); *Blackhawk Teachers' Fed'n*, 326 N.W.2d at 252 (same); *see also Union Twp. Bd. of Trustees*, 766 N.E.2d at 1030 (" '[T]he procedure by which an employee is disciplined, the manner in which discipline is meted out, and the effect of the discipline on an employee's tenure or other employment benefits are all terms and conditions of employment.' ") (quoting *State Emp't Relations Bd. v. Swanton Local Sch. Dist. Bd. of Educ.*, Ohio SERB No. 89–008 (Apr. 12, 1989)); *Cnty. of King*, 972 P.2d at 135 (the method used to carry out the employer's managerial decisions was bargainable).

¶ 44 Conversely, requiring the City to bargain with plaintiff on the discipline matrix and its practical effects does not appear to infringe on the City's managerial prerogatives in any significant way, as the City will continue to determine how and when to impose discipline, according to the agreed-upon standards. *See Electri–Flex*, 570 F.2d at 1333 ("While it is true that the Act does not take from the employer the right to enforce

reasonable rules for the conduct of the business and to take disciplinary action against employees who either violate the rules or are generally not suitable for efficient production, it is equally true that the institution of a new system of discipline is a significant change in working conditions, and thus is one of the mandatory subjects for bargaining ... included within the phrase 'other terms and conditions of employment.' " (citation omitted)); *Union Twp. Bd. of Trustees,* 766 N.E.2d at 1030 (concluding that bargaining did not impair the employer's authority); *Ellwood City,* 998 A.2d at 589, 601–02 (noting that even though the municipal code endowed the city with the authority to create a police department, to fix the employees' weekly hours and compensation, and to remove or suspend officers, "it cannot be seriously suggested that this authority precludes mandatory collective bargaining over wages, hours of work, and conditions of employment"); *cf. Morris Cnty. Sheriff's Office,* 418 N.J.Super. 64, 12 A.3d at 222 (the city's staffing decision implicated the "essential duty of government to 'spend public funds wisely' ").

¶ 45 Further, in passing the collective bargaining provision, Denver voters stated that it was their intent

> to promote harmonious, peaceful, and cooperative relationships between the elected officials of the City and County of Denver and ... the Fire Department and to protect the public by assuring, at all times, responsible, orderly, and uninterrupted operation of government services, by providing for such employees the right to bargain collectively with the employer....

Denver Charter § 9.7.1; *see Ellwood City,* 998 A.2d at 596 (noting a similar purpose in the city's collective bargaining provision).

¶ 46 Requiring the City to bargain on disciplinary matters supports this intent by ensuring that the firefighters are included in making decisions that directly impact their working conditions, such as the substantive components and practical effects of their disciplinary system. *See Univ. of Haw. Prof'l Assembly,* 900 P.2d at 168 (recognizing that "joint decisionmaking ... lead[s] to a more responsive workforce and a more effective government"); *see also Fellows v. LaTroni-*

*ca,* 151 Colo. 300, 306, 377 P.2d 547, 551 (1962) ("A proper exercise of the legislative function might well involve consultation and negotiation with spokesmen for public employees, but the ultimate responsibility rests with the legislative body....").

¶ 47 We recognize that bargaining will likely lengthen the time it takes to implement or modify a disciplinary system. However, we do not view this delay as unduly burdensome, in part because plaintiff and defendants ultimately want the same thing—an efficient and capable firefighting workforce—and, we would assume, will work together to achieve this goal quickly. *See Metro. Technical Cmty. Coll. Educ. Ass'n,* 281 N.W.2d at 205 (where a matter is of fundamental concern to the employees' interests, it is not removed from bargaining simply because it may touch upon basic policy); *cf. FOP Miami Lodge 20,* 571 So.2d at 1326 (to require bargaining on the implementation of drug testing "could hamper the City's and the citizenry's unquestioned right to a drug-free police force, thereby permitting to exist 'a powerful tool for achieving delay' " (quoting in part *First Nat'l Maint. Corp.,* 452 U.S. at 683, 101 S.Ct. 2573)). Further, the current system will remain in effect until the new matrix has been negotiated and the City will continue to exercise its rights to enforce that disciplinary system.

¶ 48 Accordingly, we conclude that discipline is a mandatory subject of bargaining.

¶ 49 We wish to clarify, however, that because discipline is not expressly included in the parties' Agreement, absent a request from plaintiff to bargain thereon, the City could have continued to exercise its traditional management right to create or modify the rules governing firefighter conduct and discipline. *See Local No. 193,* 155 Ill.Dec. 606, 569 N.E.2d at 1221 (though the city retains the right to implement discipline policies where the collective bargaining agreement is silent on disciplinary matters, if the union does not like those standards and seeks bargaining thereon, the city must bargain). Here, however, plaintiff triggered the City's duty to bargain on the discipline matrix by requesting that it do so. *See Univ. of Haw. Prof'l Assembly,* 900 P.2d at 166, 170 (an

employer's duty to bargain is triggered by the union's demand).

¶ 50 Therefore, we conclude that the trial court did not err by finding that plaintiff had met the first *Rathke* factor by showing a reasonable probability of success on the merits.

### IV. Remaining *Rathke* Factors

¶ 51 The trial court addressed each of the remaining *Rathke* factors before issuing the preliminary injunction, finding that:

- plaintiff would suffer irreparable harm in the form of damage to its reputation and the risk that denying the injunction would establish an inappropriate precedent by carving out an exception other than the two for Fire Department organization and pensions that are already stated in the collective bargaining provision;

- there was no plain, speedy, and adequate remedy at law and the harm to plaintiff would not be measurable and compensable in money damages;

- granting the injunction would not disserve the public interest because the public interest supports the policy of promoting "harmonious, peaceful, and cooperative relationships between the elected officials of the City and ... the fire department in protecting the public by assuring at all times responsible, orderly and uninterrupted operation of government services" through collective bargaining;

- the balance of equities favored granting the injunction because the risk of harm to the City was minimal and the threatened harm to plaintiff's negotiating strength and status was real, substantial, and continuous; and

- an injunction would preserve the status quo by delaying the unilateral implementation of a discipline matrix pending a trial on the merits.

¶ 52 The City has failed to show that the trial court had no basis for these findings and, having reviewed the record, we conclude that it supports the trial court's findings. *See Cody Park*, 251 P.3d at 6–7.

¶ 53 Accordingly, we conclude that the trial court did not abuse its discretion by granting the preliminary injunction.

¶ 54 The order is affirmed.

Judge NEY * and Judge MÁRQUEZ * concur.